Dennis **MEINKING**, Respondent,

v.

Starlyn M. **MEINKING** et al., Appellants.

No. KCD 27319.

Missouri Court of Appeals,
Kansas City District.

Sept. 2, 1975.

Motion for Rehearing and/or Transfer Denied Oct. 6, 1975.

Application to Transfer Denied Dec. 8, 1975.

James R. Wyrsch, Kansas City, Duncan & Russell, William E. Shull, Gladstone for appellants.

DeWitt, Zeldin & Laurent, Stanford A. Zeldin, A. Robert Parelman, Kansas City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment modifying divorce decree by transferring custody of two minor children from their maternal grandparents to their father.

On April 13, 1973, a decree of divorce was entered in favor of Dennis C. Meinking,

plaintiff, against Starlyn Meinking, defendant. Custody of the couple's two minor children, Denise and Christina, was awarded James D. Noland and Loretta Noland, parents of Starlyn Meinking. Their father was granted visitation rights every other Saturday from 9:00 A.M. to 6:00 P.M. and ordered to pay $20 per week per child for the support of the children.

On October 24, 1973, Dennis Meinking moved to modify the divorce decree insofar as it awarded custody of the children to the Nolands. The motion alleged material change in the circumstances of the parties in that plaintiff had remarried and his wife has met and loves the children and that plaintiff has "roomy living accommodations and is able to make and provide said minor children with a warm and loving home and family unit so that said minor children may grow up in a normal environment more conducive to the individual development of each child." The plaintiff prayed for amendment of the decree to give custody of the children to plaintiff. The defendant and her parents filed a general denial to the motion.

The motion was heard March 11, 1974. At that time Denise was four years of age, Christina two. Dennis Meinking, then 25 or 26 years of age, testified that he had been employed for five years as a welder and that he received around $175 per week, net pay. He had remarried September 1, 1973. He and his wife lived in a two-bedroom apartment. One bedroom would be available for the children. He stated that he had no complaint about the Nolands' treatment of the children, but brought the action "because I love my two girls and I want them with me and my wife and I feel that I can provide more love and my wife can provide more love than they could."

"I feel that we could raise them better because we are growing up with them and I'm the natural father and they don't have to take second place in my family. In the Nolands' home, they are older couple and they raise some of the kids fine and they try to raise the girls right but yet they have their own two kids they have to think of them and they have responsibility to baby-sitting even if they are the grandparents they love the two girls but I think I'm in a better position to raise them financially."

He stated that since the divorce he had paid all his bills and was financially better able to "afford the kids."

Plaintiff admitted that at the age of 17 he had been convicted on a plea of guilty to either "strong arm robbery" or "petty theft," arising from his seizing a purse from a woman. He served 11 months in the Clay County jail on the conviction.

Kay Meinking, 22 years of age, wife of plaintiff, testified that she was familiar with the children. They seem to like her and she loves them very much. At the time of the hearing she was employed by Southwestern Bell Telephone Company, but planned to stop work if her husband's motion was granted. She testified that she and her husband had made inquiries about buying a house, but she was vague as to whom she had talked on the subject.

In opposition to the motion, Mr. Noland, 46 years of age, testified that he and his wife had lived in Independence 19 years. He was employed by Allis-Chalmers and earned approximately $225 per week. He and his wife and their 14 and 20-year old sons lived in a three-bedroom house. The girls occupied one of the bedrooms. They received the same care as his own children. He had no trouble with Dennis Meinking over his visitation rights. He and his wife take the girls to church three times a week. The children's mother did not live with her parents, but she saw them regularly.

Mrs. Noland testified that, in addition to her children and the two girls, she cared for a third child in his home as a "baby sitter." She had also kept a second child on that basis for a short time. She stated that she desired to keep the Meinking children "until a fit and proper home is made" for them.

The defendants also offered testimony to the good reputation of the Nolands. Defendant Starlyn Meinking did not testify.

On the evidence, the trial court sustained plaintiff's motion and awarded him custody of the children, with visitation rights to the Nolands on every Sunday from 8:00 A.M. to 7:00 P.M. After defendants' motion to amend the judgment and for a new trial or to modify the judgment was overruled, defendants appealed. The trial court stayed the effect of the change in custody, pending the appeal.

A preliminary question raised by appellants is whether or not the modification request in this case was governed by § 452.-410, RSMo 1973 Supp., a part of the new marriage dissolution law. Appellants contend that it is, citing § 452.415, subd. 2., RSMo 1973 Supp., as follows:

"2. Sections 452.300 to 452.415 apply to all pending actions and proceedings commenced prior to January 1, 1974, with respect to issues on which a judgment has not been entered. Pending actions for divorce or separation are deemed to have been commenced on the basis of irretrievable breakdown. Evidence adduced after January 1, 1974, shall be in compliance with sections 452.300 to 452.415."

However, subparagraph 3 of § 452.415 provides:

"3. Sections 452.300 to 452.415 apply to all proceedings commenced after January 1, 1974, for the modification of a judgment or order entered prior to January 1, 1974."

■ Inasmuch as this provision deals directly with modification proceedings, it applies here, rather than subparagraph 2, dealing generally with proceedings commenced prior to January 1, 1974, in which judgment had not been entered.

Appellants contend that the respondent failed to sustain his burden of proof to adduce substantial evidence of new facts and changed conditions to authorize the modification of the decree, failed to show that the requested modification would be in the best interest of the children, and failed to show that he was a fit person to have custody of the children.

Appellants cite the recent decision of this court in *Flickinger v. Flickinger*, 494 S.W.2d 388 (Mo.App.1973). That case states the applicable law as follows (494 S.W.2d 391–392):

■ " * * * In *Drew v. Drew*, 186 S.W.2d 858 (Mo.App.1945), this court said, l. c. 865:

' * * * When one seeks to exercise a trust of such importance (custody) * * * the character and fitness of the applicant should be subjected not only to a broad but to a thorough investigation, *and very clear and convincing proof* of such fitness should be offered, particularly with a view of determining the effect of any *proposed change* of custody upon the welfare of the child.' (Emphasis added.)

\*     \*     \*     \*     \*     \*

■ "A corollary of this rule equally logical and firmly established, is that where a court of competent jurisdiction has awarded the custody of children in a divorce proceeding, there must be substantial evidence of new facts and changed conditions to authorize any modification of the original decree and the burden of proof in this regard rests upon the moving party. *Davis v. Davis*, 192 S.W.2d 41, 43 (Mo.App.1945); *Yount v. Yount*, 366 S.W.2d 744, 748 (Mo.App.1963). \* \* \*"

■ The facts that respondent had remarried and could provide the children with an adequate home with the care of a father and mother were sufficient evidence of a change of conditions, required under this rule. *Warman v. Warman*, 496 S.W.2d 286, 287[1] (Mo.App.1973); *Swan v. Swan*, 262 S.W.2d 312, 315[3] (Mo.App.1953).

Appellants' argument that the change in conditions was required to be a change in the condition of either the custodian or the children is based primarily upon § 452.410, which provides:

"The court shall not modify a prior custody decree unless it finds, upon the basis of

facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

In view of the conclusion previously reached that § 452.410 is not applicable, there is no necessity to consider whether that provision is a "codification" of the existing law (see *McFadden v. McFadden*, 509 S.W.2d 795, 798 fn. 1 (Mo.App.1974)) or whether it limits the factors which may provide the basis for modification of a custody order.

Under the law of this state as set out in the above cited cases, the facts of this case showed sufficient evidence of changed conditions to warrant the transfer of custody of the children from their grandparents to their father. The cases of *Birrittieri v. Swanston*, 311 S.W.2d 364 (Mo.App.1958), and *Bohling v. Bohling*, 464 S.W.2d 767 (Mo.App.1970), relied upon by appellants for the proposition that remarriage alone is insufficient to warrant a change of custody, involved disputes between the parents, with the parent who remarried seeking a change in custody from the other to whom custody had been granted. That is not the situation here. There is no necessity to consider the numerous cases from other jurisdictions relied upon by appellants on this proposition.

■ As argued by appellants, the mere changed conditions, standing alone, do not justify a change in custody unless it further is shown that such change is in the interest of the welfare of the children.

■ The trial court was justified in concluding, as it did, that a transfer of custody to the father from the grandparents would be beneficial to the children's welfare. Mrs. Noland recognized that their custody of the children was more or less temporary, "until a fit and proper home is made" for them. The court could well conclude that an early change would be less traumatic than one after the children had become older and possibly less adaptable to change. Furthermore, Mrs. Noland recognized that she was giving "grandmotherly" care, not motherly care, which the court might find would be provided in the changed situation. The trial court's conclusion on this largely discretionary finding will not be disregarded.

Appellants also contend that respondent failed to show that he was a fit person to have custody of the children. This charge is premised largely on respondent's conviction at the age of 17 and his testimony that he had provided no religious training for the children except by helping Denise to sing church songs once in a while, and that he went to church himself "maybe once a month." The conviction was remote and there was no evidence of other unlawful activity on the part of the respondent. The respondent's visitation right had been limited to Saturday and appellants testified that they took the children to church twice on Sunday which would explain respondent's role in this regard.

■ The trial court had an opportunity to observe respondent and his wife. The evidence showed that respondent was regularly employed and was managing his affairs responsibly. He had exercised his visitation rights regularly, evidencing a concern for his children who voiced no "negative" reports to the Nolands concerning respondent. Appellants' contention that he had failed to show that he was a fit person to have custody of the children is without merit.

In the cross-examination of respondent, appellants' counsel asked:

"[D]uring the marriage, didn't you strike Starlyn * * * ?"

Respondent replied: "In self defense."

Respondent's counsel then objected that the inquiry was irrelevant. Appellants' counsel stated that he intended to show respondent "has a propensity for violence and that would show whether or not he would be able to care for the children."

The court sustained the objection, remarking: "I don't think we should go back to the grounds for divorce."

Appellants' counsel then inquired of the witness whether or not he had told the children that "a man would take care of Grandpa" and whether he had threaten to kill himself and the children. Negative replies were made to both questions and the matter was not pursued further.

■ There is nothing in the trial court's action which calls for reversal of its order. Appellants' counsel received an answer to the question objected to. The answer was not stricken. Further questions designed to support his attempt to show a violent disposition on the part of respondent were propounded without objection and produced negative responses. There was no offer of proof to show that but for the trial court's ruling, further matters would be explored. Therefore, the trial court is not to be held to have erred.

Judgment affirmed.

All concur.