Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

L____ A____ J____,
**Plaintiff-Respondent,**

v.

C____ T____ J____,
**Defendant-Appellant.**

**No. KCD 29774.**

Missouri Court of Appeals,
Western District.

Jan. 29, 1979.

---

Miniace & Pelofsky, Lawrence H. Pelofsky, Kansas City, for defendant-appellant.

Holliday & Bryant, P.C., Mark S. Bryant, Kansas City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

A near irreconcilable clash of classic principles—the inviolability of final judgments from all save direct attack vis-a-vis the inviolability of individuals from judgments for the payment of money rendered on something as tenuous as service by publication—underlies this otherwise pedestrian appeal.

First, a look at the apical facts is in order. On May 9, 1972, a decree was entered in the Circuit Court of Jackson County, Missouri, awarding L\_\_\_\_ A\_\_\_\_ J\_\_\_\_ (wife) a divorce from C\_\_\_\_ T\_\_\_\_ J\_\_\_\_ (husband) and custody of three minor children claimed by her to have been "born of the marriage", all pursuant to a petition for divorce filed by the wife. Although the wife and children were residents of and physically present in Jackson County, Missouri, the husband was not amenable to personal service of process and jurisdictional viability of the decree rested on service by publication upon the husband. The lack of personal service of process upon the husband, conjoined with the fact that the husband at no time entered his appearance in the divorce proceeding, precluded inclusion

of any provision for alimony or child support in the decree rendered May 9, 1972.

On April 18, 1977, a pleading captioned "Amended Motion For Order of Child Support" was filed by the wife in the Circuit Court of Jackson County, Missouri. Personal service of process with respect thereto was obtained upon the husband and in a responsive pleading which he filed he denied, among other things, that he fathered one of the three minor children ostensibly "born of the marriage". At the evidentiary hearing held on the wife's motion the matter of the child's paternity was broached by the husband's counsel on cross-examination of the wife. Counsel for the wife objected to this line of inquiry on the ground that it was barred by the doctrine of res judicata as "parentage" of the child in question had been conclusively adjudicated in the prior divorce proceeding. The only indicia of record substantiating counsel's claim that paternity of the child in question had been adjudicated in the prior divorce proceeding consists of a statement by the trial judge, apparently made while perusing the May 9, 1972, decree, that it recited that the child in question was "born of said marriage". Notwithstanding an offer of proof made by counsel for the husband at this point, the trial court forbade any inquiry into the child's paternity and advised counsel for the husband that the only procedural avenue which remained open for questioning the paternity of the child was by way of "a writ of coram nobis".

A farrago of inconsistencies surrounds the wife's claim for child support. In her motion the wife asked for child support in the amount of "$35.00 per week per child". At the hearing she testified that "$25.00 per week per child" would be a "reasonable sum" for their support. Her principal evidence as to the husband's ability to pay child support, i. e. that his income in 1975 (a period some two years before the hearing date) was "about $3,600.00", was stale to say the least. The only other evidence even remotely connected with the husband's ability to pay disclosed that at the time of the hearing he was in business for himself under the firm name of Sonny's Auto Polish.

There was not so much as a scintilla of evidence concerning either the gross receipts or met profits generated by Sonny's Auto Polish. Nor was there any evidence as to either the gross or net asset value of Sonny's Auto Polish. About all that can be garnered from the evidence is that "at times" Sonny's Auto Polish "employed six people". With only this skeletal evidence to go on, one might well conclude that Sonny's Auto Polish consisted of nothing more than some strong backs and polishing cloths. On the basis of this veneerlike record the trial court awarded the wife "$50.00 per week per child" for support of the three minor children, same totalling $7,800.00 per year.

On appeal the husband rivets his attention on two points: (1) error on the part of the trial court in refusing to hear evidence as to the child's paternity; and (2) an "abuse of discretion" on the part of the trial court as reflected by the amount awarded for child support. In order to facilitate a more meaningful discussion of the two points they will be dealt with in inverse order.

■■■ Section 452.340, RSMo Supp. 1973 (effective Jan. 1, 1974), a component section of the Dissolution of Marriage Act, articulates that among the "relevant factors" to be considered in fixing the amount to be awarded for child support are those specifically enumerated in the statute, the sixth and final one thereof being "[t]he financial resources and needs of the noncustodial parent". Section 452.415.3, RSMo Supp. 1973 (effective Jan. 1, 1974), another component section of the Dissolution of Marriage Act, provides that "Sections 452.300 to 452.415 apply to all proceedings commenced after January 1, 1974, for the modification of a judgment or order entered prior to January 1, 1974." Insofar as awards for child support are concerned, "financial resources" of the husband may properly be equated to ability to pay, which, both before and after the advent of the Dissolution of Marriage Act, has been held to be a prime consideration in assessing the propriety of the amount awarded. *McM. v. McM.*, 506

S.W.2d 14, 16–17 (Mo.App.1974); and *In Re Marriage of C_____ S_____ B_____*, 546 S.W.2d 186, 188 (Mo.App.1976). This court abhors any notion that the Dissolution of Marriage Act makes all judicial pronouncements in the field of domestic relations prior to its enactment passe. Therefore it is appropriate to observe that in *Simon v. Simon*, 248 S.W.2d 560 (Mo.1952), the court held that a reasonable relationship should exist between the amount awarded for child support and the evidence presented in its support, and that conjecture, speculation and surmise would not suffice to bridge an evidentiary gap in that respect. Absent such evidentiary support in *Simon* a judgment entered in favor of the wife for child support was reversed and the cause was remanded to the trial court for the taking of further evidence. In the instant case there was such a paucity of evidence regarding the husband's current ability to pay child support that no relationship, reasonable or otherwise, existed between the amount awarded to the wife for support of the children and the husband's ability to pay. Perforce, the judgment awarding the wife "$50.00 per week per child" for support of the three minor children claimed by her to have been born of the marriage must be reversed and the cause is remanded to the trial court for the taking of further evidence. Even the stringent scope of appellate review for court tried cases laid down in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), will not permit the judgment in the instant case to stand because this court, albeit with a sense of caution, is of the "firm belief" that said judgment is so overwhelmingly "against the weight of the evidence" that it is patently "wrong".

The husband's remaining point, bottomed upon the trial court's refusal to permit the husband to broach the issue of the paternity of one of the children claimed by the wife to have been born of the marriage, remains to plague this case. As the order or judgment awarding the wife child support must be reversed and the cause remanded for the

taking of further evidence it is reasonable to assume that the husband will once again attempt to interpose the defense that he did not father the child in question. In the event this assumption holds true, it is imperative that the first point raised by the husband on appeal be decided in order to afford the trial court and the parties some guidance when the matter is reheard.

■ A crucial question overshadowing all others in this case is whether that portion of the final judgment entered in the divorce proceeding on May 9, 1972, finding the child in question to have been "born of said marriage", resting as it did on service by publication, was binding on the husband in the subsequent proceeding brought by the wife for support of said child. In short, did the referred to portion of the final judgment entered in the prior divorce proceeding, insofar as the husband is presently concerned, entail an exercise of in personam or in rem jurisdiction? If it entailed an exercise of in personam jurisdiction it is not binding upon the husband in the present support proceeding because ever since the landmark case of *Pennoyer v. Neff*, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877), the courts of this and other states have axiomatically accepted that service by publication will not support an in personam judgment unless the party sought to be subjected thereto has otherwise voluntarily entered his appearance in the action culminating in such a judgment.[1] On the other hand, if it involved an exercise of in rem jurisdiction it was binding upon the husband in the present support proceeding because a final in rem judgment based on constructive service is binding upon all who were parties thereto and their privies in any subsequent proceeding in which they are involved by virtue of either the doctrine of res judicata or collateral estoppel, whichever is appropriate. *Shemwell v. Bettis*, 264 Mo. 268, 174 S.W. 390, 391 (1915); and *Williams v. Luecke*, 152 S.W.2d 991, 994 (Mo.App.1941).

---

1. Since the May 9, 1972, divorce decree rested solely on *service by publication* any reference to Rule 54.06(b) or a protracted discussion of the ramifications of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683, would be academic.

Did the paternity of the child in the divorce proceeding partake of the nature of a res in the sense that the court was purporting to adjudicate divisible interests and obligations in the child as if it were nothing more than a chattel? The sacred and coveted niche which children have historically occupied in the law augers against such a cold, abstract conclusion. Counsel's insouciant approach to this vital issue forced this court to resort to its own research to ascertain whether any case authority exists with respect to whether or not an express or implied adjudication of the paternity of a child in a divorce action predicated upon constructive service of process is binding upon a husband in a subsequent support proceeding predicated upon personal service of process upon the husband. In an attempt to bring this vital issue into even sharper focus this court suggests that it be perspectively viewed from several vantage points. For instance, if the paternity of a child is nothing more than a status or res before the court in a divorce action then there is impetus to the argument that an adjudication of paternity in a divorce action, even though based upon service by publication, is binding upon a husband in a subsequent support proceeding by reason of the doctrine of res judicata or collateral estoppel, whichever is appropriate. On the other hand, if the paternity of a child, with all its attendant and corresponding rights and obligations, is viewed as constituting more than a mere res, an adjudication of paternity in a divorce action based upon service by publication should not be binding upon a husband in a subsequent support proceeding as no jurisdiction over the person of the husband was ever obtained in the prior divorce proceeding.

Although no case authority directly in point has been located, several cases have been discovered which tangentially light the way for disposition of the important issue at hand. The Supreme Court of this state held in *Beckmann v. Beckmann*, 358 Mo. 1029, 218 S.W.2d 566 (Mo. banc 1949), that the status of a child in the context of awarding custody in a divorce proceeding constituted a res which, if within the juris-

diction of the court, could be validly adjudicated and upon becoming a final judgment was conclusive as to a husband upon whom only service by publication was obtained. At the same time, the Supreme Court held in *Beckmann* that such portion of the judgment therein which awarded the wife $30.00 per month for each of the two children of whom she was awarded custody was "void for want of jurisdiction", since the only service obtained upon the husband was by publication. The dichotomous result reached in *Beckmann* gives substance to the conclusion that the status of a child in the context of awarding custody in a divorce action as being a res was limited to accommodating the disposition of children on such a basis as would best serve their interests and welfare and did not purport to adjudicate the paternity of children in the sense of fixing a personal obligation for their support on a husband upon whom only service by publication was obtained. A case disclosed by this court's own research which is closest in point is *T. J. K. v. N. B.*, 237 So.2d 592 (Fla.App.1970), which holds that in a bastardy proceeding brought by a natural mother against a putative father the trial court lacked jurisdiction to adjudicate the paternity of a child when only service by publication was obtained upon the putative father. The court in *T. J. K.* reasoned that the filial judgment sought therein was designed for the sole purpose of furnishing a basis for subsequently obtaining a money judgment against the putative father for support of the child. Hence, the bastardy proceeding did not affect the status of the child in the sense of it being a res, as the sole function and office of the proceeding was deemed to be directed toward furnishing a basis for pursuing a further action to secure a personal judgment against the putative father for support of the child. An analogy may be drawn between *T. J. K.* and the prior divorce proceeding in the instant case. The matter of custody aside, insofar as the divorce decree declaring the child in question to have been "born of said marriage" is concerned, its remaining principal purpose, if not its sole remaining purpose,

could only be to furnish a basis upon which to thereafter secure a personal judgment in favor of the wife and against the husband for future child support if and when personal service of process could be obtained upon the husband. If for no other reason, its remaining function and purpose is deemed to have been so limited because it was not binding upon the child in question as he was not a party to the divorce action. _L____ v. R____, 518 S.W.2d 113, 125 (Mo.App. 1974).

▪ Experience teaches that in divorce or dissolution of marriage actions instigated by a wife, where only service by publication is obtained upon the husband, and which culminate in default or pro confesso judgments, any decretal provisions as to children being "born of said marriage" or as being "born during said marriage" or as being "the child or children" of the wife and husband have little by way of evidence to support them and in reality do little more than assume that the children were born during wedlock and are entitled to full benefit of the ancient common law presumption that children born during wedlock are presumed to be legitimate.[2] Under the limited facts and circumstances of this case, permitting the husband in a subsequent support proceeding in which personal service of process is had upon him to contest the child's paternity strikes a proper balance between preservation of the inviolability of final judgments from all save direct attack and the inviolability of individuals from judgments for the payment of money rendered on something as tenuous as service by publication. The true strength of the common law is its tensility which permits it to accommodate but not destroy seemingly irreconcilable principles.

In the event the husband persists in litigating the child's paternity on remand all concerned are admonished to take a long hard look at the requirements appertaining to parties set forth in _L____ v. R____,_ supra. Further this court cautions all concerned that its decision herein in no way implies that the purported facts contained in the husband's offer of proof in support of his defense of lack of paternity were sufficient to overcome the ancient common law presumption of legitimacy clothing the child.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

All concur.

---

2. See _In re L____,_ 499 S.W.2d 490, 492 (Mo. banc 1973) reaffirming the presumption and explicating its effect.