**In re the MARRIAGE of Roger Gene MAUPIN and Rhonda Maupin.**

**Roger Gene MAUPIN and Jane Maupin, Appellants,**

v.

**Rhonda MAUPIN (now Rhonda Jackson), Respondent.**

**No. WD 31247.**

Missouri Court of Appeals, Western District.

June 9, 1980.

John G. Miller, Odessa, for appellants.

Wm. Patrick Cronan, Fayette, for respondent.

Carlyle Foley, Fayette, guardian ad litem.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

SWOFFORD, Judge.

This is an appeal from an order sustaining the motion of respondent-mother (Rhonda) to modify a dissolution decree as it pertained to the custody and support of her son, now 3½ years of age, born of her marriage to appellant, Roger Gene Maupin (Roger).

Roger and Rhonda were married when he was in the Navy and she was a high school student. A son, Jeremy, was born November 5, 1976. The parents separated in February, 1977 and later the marriage was dissolved and the custody of Jeremy awarded to the father, Roger. Rhonda testified that she did not seek custody of Jeremy because at the time she was unemployed, did not have a place to live, and Roger was in a better position to support the boy.

The decree of dissolution was entered in May of 1977, and on July 28, 1978 Rhonda filed her motion to modify the decree and sought custody of Jeremy due to a substantial change of circumstances. She also sought a child support award of $200.00 per month, attorney's fees and costs.

The record on the hearing consists of the testimony of the parents, the paternal grandmother, Jane Maupin, a study conducted by the Howard County Division of Family Services (admitted in evidence by stipulation of the parties), the social worker who conducted the study, and other witnesses. From this evidentiary record the following facts appear:

At the time of the filing of the motion, the hearing and subsequent judgment, Rhonda had married one Kenny Jackson, and a son was born of that marriage, who was one year old at the time of the hearing. Both Rhonda and Kenny are employed and their son is left with a baby-sitter during the day. They have a pleasant and adequate apartment in New Franklin, Missouri; Rhonda is employed at Howard Johnson's in Columbia, Missouri and earns $413.00 per month; and Kenny draws approximately $400.00 per month Social Security disability benefits as a result of childhood polio, and operates a shoe repair store. The income derived from the shoe repair store does not appear in the record. Kenny Jackson in his testimony expressed a desire to receive Jeremy into his home as part of the family. Ann Stout, the Howard County social worker, reported and testified favorably on the Jacksons' living conditions and stated that they appeared stable and enjoyed a good relationship. She reached this conclusion after a number of visits to the Jackson home and observation of them there and outside the home.

The appellant, Jane Maupin, Roger's mother, has had physical care of Jeremy since the spring of 1977. She is 47 years of age and initially occupied an apartment over a tavern in Concordia, Missouri. At the time of the hearing, she had moved to a three-bedroom apartment which she occupied with her 16 year old daughter, Denise, and Denise's child, Jeffrey, 18 months old (born to Denise out of wedlock when she was 14 years old); Jane's 12 year old son, Darrell; and Jeremy, whose custody is now in dispute. Initially, her son Roger lived with them, but he moved out because he didn't like living in Concordia. He now lives near New Franklin, Missouri and visits Jeremy about once a month and "plays an active role in his development". Jane Maupin works at night and the children are cared for then by Denise, Jeremy's 16 year old aunt. Jane receives $102.00 per month Aid for Dependent Children allowance for Jeremy's care. Of Jane Maupin's six children, only one has graduated from high school (two of the children had not reached graduation age at the time of the hearing). So far as the record discloses, Jeremy is healthy and well cared for. Jane Maupin received $256.00 A.D.C. for her children and earns $352.00 per month wages. The nature of her employment does not appear, and contributions, if any, from Roger for his son's support are not shown. Jane testified that her son, Roger, works "for a railroad company getting ties". The social service study states he is employed as a "bus driver".

Roger testified that although he was awarded custody of Jeremy, he asked Jane to take care of him and he tries to visit Jeremy once a month. Only if he ever remarried would he want physical custody of Jeremy. His opposition to the modification of custody provision is based on a reluctance to believe that Rhonda now wants custody when she refused it at the time of the dissolution. He wants his mother to continue her present role.

Rhonda testified that she has seen Jeremy about once every six months, but that other attempts at visitation had been prevented by the Maupins. Jane Maupin said Rhonda had visited Jeremy about five times and denied any refusal of visitation rights.

Ms. Stout, the social worker who reported on the Maupin and Jackson families, gave her opinion that Jeremy should be placed in the Jackson home because he should be with his mother; he would have a mother and

father in the home; Roger, the father, has no intention of establishing a home for Jeremy; and the change while requiring a period of adjustment would be in the child's best interest in the long-run.

The record before this Court is absolutely devoid of any evidence of Roger Maupin's gross or net income, his available assets, or his personal needs, debts and expenses. Likewise, there is no evidence as to the added expense which the care of Jeremy might entail as far as Rhonda Jackson is concerned.

The trial court found the issues in favor of and placed Jeremy in the custody of his mother, and granted the father reasonable visitation rights and temporary custody on one weekend every month. It also ordered the appellant, Roger, to pay $75.00 per month child support, costs of the proceedings, and $300.00 for respondent's attorney's fees. The father, Roger, and the paternal grandmother, Jane, prosecute this appeal.

The appellants argue under their first point of error on this appeal that the "trial court was presented with no substantial evidence of change of circumstances" to support the change of custody, and that the remarriage of Rhonda *alone* is not *per se* sufficient change to justify the order, and cite *Callaway v. Callaway*, 590 S.W.2d 700[2] (Mo.App.1979). Factually, the *Callaway* case is remarkably similar to the situation in the instant case. The evidence there showed that the natural mother had remarried, that this had resulted in increased parental maturity, a stable home-life, and that she and her husband were able and desirous of providing suitable care for the child. The court in *Callaway* did declare that, "Remarriage of a non-custodial parent is not *per se* a basis for modifying a decree to grant custody to that parent", l. c. 702. However, the court in *Callaway* ordered the change of custody from a non-parent (paternal grandmother) to the natural mother upon the basis of the remarriage, coupled with the above enumerated factors shown by the evidence.

Upon this record, *Callaway*, rather than defeating *Rhonda's* claim to custody, is supportive of that claim. Another case where the custody was changed from a grandparent to the natural parent upon remarriage of the parent is *Meinking v. Meinking*, 529 S.W.2d 440[4] (Mo.App.1975). In dealing with the authorities holding that remarriage standing alone does not warrant a change of custody, the *Meinking* court noted that those cases involved "disputes between parents", l. c. 444. See also, *Downing v. Downing*, 537 S.W.2d 840, 844[5] (Mo. App.1976).

Of course, the courts of this state very properly have firmly adhered to the basic consideration in this type of proceeding, that the best interests of the child is of overriding importance. It can be discerned, however, that other factors being equal, the courts have favored lodging custody in a natural parent rather than a non-parent. This record unquestionably establishes that the real and actual care and custody of Jeremy has rested with Jane Maupin. The natural father, who was given custody, has, in fact, abdicated that right in favor of Jane and moved from his mother's home in Concordia where he would have daily contact with Jeremy, and has no intention of establishing another situation or home for his son's care.

Accordingly, it would seem that the real issue as to custody of Jeremy is, if such change of circumstances had occurred in the social and economic conditions of Rhonda as to warrant the change of custody to her, would such change be in Jeremy's best interest. Keeping in mind the restrictions on the scope of review in this Court as mandated by *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), and without again stating the evidence before the court below, it is apparent that there was substantial competent evidence to warrant the change of custody order, such order was not against the weight of the evidence, the trial court did not erroneously declare or apply the law, and there is nothing in this record that convinces this Court that the judgment awarding the change was wrong. Accord-

ingly, the judgment awarding custody of Jeremy Maupin to his natural mother, Rhonda Jackson, is affirmed.

Appellants' Point II (allowance of attorney's fees) and Point III (allowance of child support) are both based upon the claimed error that the record contained no evidence as to the financial resources of the appellant Roger, and that, therefore, the awards were not justified. The scope of Point II is expanded in the argument portion of appellants' brief in that it is asserted that the evidence discloses that the respondent is able to pay her own attorney. Point III is not as expanded in argument relating to the child support award.

■ As to Point II (the allowance of attorney's fees) the duty placed upon the trial court by statute is to consider "all relevant factors, including the financial resources of both parties". Section 452.355 RSMo 1978. Having so considered, it is generally held to be largely a discretionary matter thereafter as to whether the court make an allowance of attorney's fees. *Rissler v. Rissler*, 541 S.W.2d 64 (Mo.App.1976). An award for attorney's fees is predicated upon a showing of need or inability to prosecute or defend the action on one's own, and a showing of the ability of the adverse party to pay. *Johnston v. Johnston*, 573 S.W.2d 406 (Mo.App.1978). This record is seriously deficient to justify the award of $300.00 attorney's fees to respondent. There was not sufficient evidence presented to the trial court as to Rhonda's need or Roger's ability to pay, upon which the trial court could exercise its discretionary power.

■ As to Point III (the award of child support), the same considerations as to the need for a showing of the financial resources of the parties together with the personal needs of the custodial and non-custodial parents, and of the child for necessary support must be shown. Section 452.-340 RSMo 1978. The evidence is completely lacking as to Roger's financial resources and his needs; and as to Rhonda's needs. The only evidence as to the child's needs is the fact that Jane Maupin, his actual custodian, draws $102.00 per month in A.D.C.

There was insufficient evidentiary basis for the award.

■ Throughout these proceedings the interests of the minor, Jeremy, were capably represented by Carlyle Foley, Attorney at Law, as duly appointed and acting Guardian ad Litem. He has filed in this Court his motion for allowance of attorney fee for his services in the amount of $705.00 and for the payment of $94.66 for expenses in this appeal. This Court has considered this motion of the Guardian ad Litem and has concluded that, so far as the time and expenses incident to the appeal, the requests are reasonable and fully justified. However, an allowance thereof at this time labors under the same evidentiary handicap as do the matters of child support and attorney's fees, as hereinbefore discussed. These facets of the proceedings must be remanded to the trial court for further evidentiary proceedings and determination at that level. *L.A.J. v. C.T.J.*, 577 S.W.2d 151 (Mo.App.1979).

Accordingly, the judgment as to change of custody is affirmed, and the judgment for allowance of attorney's fees and support of the minor child is reversed and remanded for further proceedings. The matter of allowances to the Guardian ad Litem is also remanded to the trial court for hearing and allowance. Upon further hearing, the trial court is directed to make such orders and upon such conditions as are deemed appropriate under the further evidence which may be adduced.

It is so ordered.

All concur.