**In the Interest of S.M., A Minor.**

**V.N., Respondent,**

**v.**

**M.W.S.M., Appellant.**

**No. 53408.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 26, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 25, 1988.

Arnold T. Phillips, Jr., St. Louis, for appellant.

Ellyn Sternfield, Clayton, for respondent.

GRIMM, Judge.

Appellant Father, in a motion to modify a decree of dissolution, sought additional visitation with his two sons, S.M. and C.M. Thereafter, Mother, in a motion to modify, asked the court to restrict Father's visitation due to alleged sexual abuse of the children by Father and his girl friend, B.K. Father appeals from the judgment denying his motion and granting Mother's motion. He also appeals from the judgment in a related juvenile court proceeding involving his son, S.M., which also denied him visitation rights.

Father raises four issues on appeal. First, that the trial court erred by allowing testimony from Mother, a psychologist, and a police officer concerning statements made by a child regarding alleged sexual abuse on the basis that the testimony was hearsay. We disagree, because there is an applicable special hearsay exception for statements of a child indicating sexual abuse. *In re Marriage of P.K.A.*, 725 S.W. 2d 78 (Mo.App.S.D.1987). Second, that the trial court erred in denying a stay of proceedings of the motion to modify and juvenile court matter pending resolution of a related criminal proceeding. We disagree, because there was no abuse of discretion in failing to stay those proceedings. *State ex rel., United States Fire Ins. Co. v. Terte*, 351 Mo. 1089, 176 S.W.2d 25, 30 (banc 1943). Third, that the trial court erroneously denied Father's motion for a continuance because he was deprived of the opportunity to present a particular expert witness in his behalf. We disagree, because Father's motion did not comply with Rule 65.04, and further, there was no abuse of discretion. Fourth, that the trial court erred in denying Father's "motion to dismiss the juvenile proceedings because the juvenile court has jurisdiction over minors only." We disagree, because the juvenile court had proper jurisdiction over Father's son, S.M., pursuant to § 211.031 RSMo. 1986.

Mother and Father were divorced on December 14, 1982. There were two sons born of the marriage, C.M., born November 20, 1978, and S.M., born November 3, 1981. The dissolution decree awarded Mother custody of the two boys and granted Father certain visitation rights.

Father filed a motion to modify dated March 31, 1986, seeking expanded visitation rights. On September 18, 1986, the juvenile officer for St. Louis County filed a petition concerning S.M., alleging that S.M., between January and August, 1986, had been a victim of sexual abuse by his father. On September 23, a temporary detention order was granted. The next day, the juvenile court commissioner placed temporary custody with the Division of Family Services with physical custody in Mother. Further, the placement order provided that there were to be no visits with the child unless supervised by the Division of Family Services. On September 26, following a juvenile detention hearing, the order of September 24 was basically affirmed, however, Father was granted visits with S.M. every other week to be arranged and su-

pervised by the Division of Family Services. On September 26, in the dissolution case, Mother filed a motion for a temporary restraining order and injunction, which requested suspension of Father's temporary custody and visitation rights; in addition, she filed a motion to modify, seeking to restrict Father's visitation with the two boys. Each of these motions alleged that the boys had been sexually abused by Father and B.K.

On October 20, the dissolution file was transferred to the Juvenile Division; the matters were thereafter consolidated. Then, on December 30, 1986, a two-count information was filed in the Circuit Court of Jefferson County, charging Father with sodomy and incest with S.M.

Thus, on January 14, 1987, a pre-trial conference was scheduled to be held on February 9, for the juvenile case and the motions to modify; the cases were to be heard the week of February 9. Following the pre-trial conference, the cases were peremptorily set for contested hearing on April 27. Father changed attorneys on April 4, and his new attorney filed a motion for continuance, which was granted. The order granting the continuance reset the matters peremptorily for hearing the week of June 22 and provided *"No* further continuance will be granted in this matter (emphasis in original)."

On June 2, Father filed a motion for a stay of proceedings until the disposition of the criminal proceedings in Jefferson County, and, on June 17, an application for a continuance on the ground that his expert witness was unavailable to testify the week of June 22. On June 22, the trial court overruled those motions, as well as Father's motion to dismiss, and the hearing was held.

■ Before setting forth a summary of the facts, we observe that the statement of "facts" set out in Father's brief ignores the requirements of Rule 84.04(c). That rule provides that the statement of facts "shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." The statement of facts submitted by Father contains very few facts, has quotations from articles not in evidence, and is replete with argument. Such a one-sided, argumentative statement of facts would justify dismissal for violation of Rule 84.04(c). *S.R. v. S.M.R.,* 709 S.W.2d 910, 912 (Mo.App.E. D.1986). In our discretion, we decline to impose that sanction.

In the consolidated hearing, which extended over three days, the juvenile officer presented three witnesses. The three were Mother; Jan Vessell, a detective with the Jefferson County Sheriff's Department; and Ann Duncan, a clinical psychologist. Mother had one witness, Loren Ribley, a family treatment supervisor with the Family Resource Center, a child abuse and neglect center. Father did not testify (except concerning his income and expenses) and did not offer any witnesses.

Mother was asked whether S.M. had said anything to her the previous summer about something taking place during his visitations with his father. Father's attorney objected, saying "that calls for hearsay." Following extensive discussion, and recognizing that the evidence was being submitted for the truth of the statements, the court overruled the objection, stating that the court was going to follow the law as expressed in *In re Marriage of P.K.A. and J.E.A.,* 725 S.W.2d 78 (Mo.App.S.D.1987). Thereafter, Mother said that in July, 1986, S.M. first, and then both boys, told her about "Daddy touching [S's] penis" in the bedroom at Father's house. Two days later, S.M. told Mother, "I don't like it when Dad touches my penis." S.M., according to Mother, said he did not like the touching penis game. He also told Mother that he had touched Father's girl friend's breasts, that she lets him, and that the girl friend said it was okay to do so.

Ann Duncan, a clinical psychologist for 22 years, testified that she first met S.M., then four years old, on August 14, 1986. She asked S.M. to draw a person, whereupon he spontaneously said, "At my dad's house, he says he wants to play, you touch my penis, I'll touch yours. It kind of makes me mad." S.M. also drew genitals on his stick figures, which, according to

Duncan, is unusual for a child of S.M.'s age at a first visit. Duncan questioned S.M. about the penis game and learned that he only played the game with his father and his father's girl friend. His oral description of the activities with Father and his girl friend were demonstrated with anatomically correct dolls. The activities demonstrated included fondling of the genitals and sexual intercourse. Following this session, Duncan met with C.M., who corroborated S.M.'s account. Duncan met with S.M. again on August 18, 19, and 28; he basically repeated what he had previously told Duncan. She continued to meet with him about every two weeks, and he never told her anything inconsistent with what she was told during the first month she worked with him. However, a few days after a court hearing on April 28, 1987, he told Duncan that he "made it all up. Let's put it all back the way it was." When asked why, S.M. said, "Well, then Daddy wouldn't be mad at me." Yet, during this session when he "recanted," he drew pictures of sexual activities with Father and Father's girl friend. Without objection, Duncan expressed the opinion that S.M. had been sexually abused by both Father and Father's girl friend.

Jan Vessell testified that in her work for the Sheriff's Department, she specializes in cases of child sexual abuse. Over Father's objection of hearsay, Vessell described an interview she had on August 28, 1986, with S.M., wherein S.M., in explicit detail, described various sexual activities with Father and his girl friend. Without objection, she stated she had S.M. use anatomically correct dolls to show her how the "games" were played with Father and his girl friend; suffice it to say he did, with the same explicit detail. Without objection, she stated she said she felt that S.M. was "totally, completely truthful," and that out of five hundred children she had interviewed, S.M. was "probably the most honest and truthful child" she had ever interviewed.

Vessell separately interviewed C.M., who confirmed S.M.'s description of the sexual activities. C.M. was quoted as saying that the sexual activities "happened lots of times, and it happened during their last visit a number of times." C.M. was not involved in the "games," other than as an observer.

Loren Ribley, a family treatment supervisor at a child abuse and neglect center, testified in Mother's case. He has worked with C.M. on a weekly basis since August, 1986, roughly 40 times. Over an objection of hearsay, he said that C.M. related to him in March, 1987, that S.M. told him "[Father and girl friend] were playing the touching penis game with me." Although C.M. wanted to have visits with his father, he also indicated that he wanted social workers present during the visits because of his fear of his father. Without objection, Ribley expressed the opinion that it would be very detrimental for C.M. to be with Father at this point. He thought that visits with Father could resume at some point after Father was involved in treatment. But he recommended that there presently be no visits between Father and C.M. On cross-examination by Father's attorney, Ribley said that he had seen a videotape of a session between Duncan and S.M. He observed this to enable him to decide for himself whether S.M. had been subjected to sexual abuse. In response to Father's question as to whether the Duncan interview was conducted in a manner that would produce a trustworthy result, he answered "Yes," and that the responses from S.M. "were even a more clear indication" of sexual abuse.

At the conclusion of the testimony, the trial court sustained Mother's motion to modify and denied Father's motion to modify. The court also found the allegations in the juvenile court petition to be true. As a result of those orders, Father's visitation rights and temporary custody rights were denied "pending further order of the Court," and Father was directed to engage in a counseling program approved by the Division of Family Services.

■ On appeal, Father first alleges that the trial court erred in allowing Mother, a psychologist, and a police officer, to testify concerning statements made by a child regarding alleged sexual abuse on the basis

that the testimony was hearsay. Father additionally argues that the court's admission of the testimony eliminates his opportunity to confront his accuser, thereby violating his sixth Amendment rights under the United States Constitution. Addressing Father's sixth amendment argument first, none of the proceedings here involve criminal proceedings. As to the juvenile court proceeding, such proceedings are neither criminal nor penal in nature. *In Interest of P.A.M.*, 606 S.W.2d 449, 452 (Mo. App.W.D.1980). The motions to modify were civil in nature. The sixth amendment to the United States Constitution provides, in part, that "In all criminal prosecutions, the accused shall enjoy the right." Here, we are not dealing with a criminal prosecution, and therefore sixth amendment rights are not applicable to these proceedings. None of the cases cited by Father provide otherwise.

In admitting the testimony concerning statements made by S.M. and C.M. and overruling Father's objection of hearsay, the trial court said it was going to follow the ruling in *In re Marriage of P.K.A.*, 725 S.W.2d 78 (Mo.App.S.D.1987). That case involved a motion for contempt filed by father when mother refused to let him have their son for his scheduled visitation. In hearing the motion, the trial court found that mother was justified in not following the terms of the dissolution decree, and also amended the decree to allow father only supervised visitation with the child. The trial court's action was based on mother's testimony relating statements of the child indicating sexual abuse by father, as well as similar testimony from a child psychologist. The *P.K.A.* court acknowledged that such testimony was hearsay and ordinarily inadmissible. Recognizing that this type of abuse would not often occur in the presence of persons competent to testify, as well as the necessity to have such statements considered for their truth, a special hearsay exception was created. This exception applies to non-jury sexual abuse cases where (1) the best interest of the child is the primary concern; (2) sexual abuse may have occurred, or has been threatened; (3) the child might not be competent or reasonably expected to testify to it; and (4) there is a substantial basis that the statements are true. *Id.* at 81.

Applying the *P.K.A.* criteria to this non-jury sexual abuse case, the best interest of a child is the primary concern in a dissolution proceeding involving child custody, whether it is the original hearing, *Bull v. Bull*, 634 S.W.2d 228 (Mo.App.E.D. 1982), or a motion to modify, *In re Marriage of Maupin*, 600 S.W.2d 686, 689 (Mo. App.W.D.1980). Similarly, juvenile court proceedings are for the protection and support of children who are in need of care and treatment, § 211.031.1(1), and the child's best interest is a primary concern. *In re D.L.W.*, 530 S.W.2d 388, 390–391 (Mo. App.W.D.1975). The second requirement, that abuse may have occurred or been threatened, was the basis for both mother's motion to modify and the juvenile officer's petition. As to the third prong, where the child was five years old at the time of the hearing, a question exists whether S.M. was competent to testify; certainly, the trial court could determine that it was not reasonable to have the boys testify when the alleged abuser is their father. Finally there was a substantial basis that the statements were true. Four people testified to various times when either S.M. or C.M. related experiences of sexual abuse. This testimony covers the period of time from July, 1986, when Mother first heard the statements, through June 21, 1987 (the night before the hearing), when Ribley last heard them. The children's statements to these people were consistent.

Father refers us to three Missouri cases in support of his objection that the statements were hearsay. *Dagley v. Dagley*, 270 S.W.2d 553 (Mo.App.E.D.1954), involved a motion to modify a child custody order, wherein the trial court permitted mother and grandmother to testify concerning statements made by the parties' daughter. None of the statements referred to sexual abuse and therefore *Dagley* is not on point. *M. v. G.*, 301 S.W.2d 865 (Mo.App.E.D.1957), also involved a motion to modify a divorce decree. There, the trial court refused to allow the parties'

twelve-year-old daughter to testify, yet allowed father to testify that the daughter said that her mother had bitten her finger, thrown a shoe at her, left her alone, and similar occurrences. That court reversed the trial court for erroneously refusing father the right to have the child testify, as well as for the hearsay evidence. None of the statements referred to sexual abuse, and therefore, *M. v. G.* is not on point. Finally, Father refers us to *C.R.K. v. H.J.K.*, 672 S.W.2d 696 (Mo.App.E.D.1984), a juvenile court proceeding wherein father was alleged to have sexually abused his 2½ year-old daughter. Testimony was received, over an objection of hearsay, from mother, a psychiatrist, and a police officer to the effect that father sexually abused the child. The *C.R.K.* court reversed the trial court, declaring the statements were hearsay and inadmissible for any purpose. At the time *C.R.K.* was decided in 1984, it correctly stated the law in Missouri. Since that time, however, the General Assembly has enacted several new provisions regarding sexual abuse. In 1985, C.C.S.S.C.S.H. C.S.H.B. 366, H.C.S.H.B. 248, H.C.S.H.B. 372, and H.B. 393 enacted, among other things, several new amendments and provisions relating to sexual abuse; 211.447.-2(2)(C), clarifying that sexual abuse is a basis for termination of parental rights; 491.060(2), making children under ten years of age competent to testify in all Chapter 566 (sexual offenses) cases and not just selected ones; 491.075, allowing statements made by a child under the age of twelve admissible as evidence in Chapter 566 cases; 492.304, allowing for visual and aural recording of the statement of a child under the age of twelve in Chapter 566 cases; 546.260, making a spouse a competent witness against a spouse in Chapter 566 cases; and creation of the Child Victim Witness Protection Law, which permits the use of video recordings of child victims in Chapter 566 cases. An emergency clause was attached to this bill as it related to sections 491.060 through the Child Victim Witness Protection Law "[b]ecause immediate action is necessary for the effective prosecution of crimes involving children." L.1985, p. 629. Then, in 1987, H.C.S.H.B.

598 was adopted, to provide further protection for certain child victims. That act clarified § 491.696 to make clear that the Child Victim Witness Protection Law covered children who were the alleged victims of sexual abuse and coverage included juvenile court hearings as well as criminal proceedings. Also, a Child Protection Orders Act, patterned after the Adult Abuse Act (§ 455.010 et seq.), was enacted covering abuse, and specifically sexual abuse, of children. L.1987, p. 884. In view of these changes which reflect the public policy of the citizens of Missouri, the trial court did not err in following *P.K.A.* and overruling Father's hearsay objection. Point denied.

Father's next issue on appeal is that the trial court erred in denying a stay of the proceedings pending resolution of the criminal trial in Jefferson County. Father specifically alleges that the risk of self-incrimination forced him to waive testimony on his own behalf in these proceedings to protect his fifth amendment rights in the criminal case, thus denying him the opportunity to testify to protect his parental rights. Neither Father nor Mother referred us to any Missouri cases on this issue.

The granting or refusing of a stay of proceedings rests in the discretion of the trial court, the exercise of which will not be interfered with unless clearly abused. 1A C.J.S. Actions § 244. 1 Am.Jur.2d Actions § 97. *Ryan v. Campbell Sixty–Six Express*, 365 Mo. 127, 276 S.W.2d 128, 131 (banc 1955). A trial court has the power to grant a stay of proceedings on the ground that another action is pending, but whether it should be granted in a certain case is discretionary with that court. *State ex rel., United States Fire Ins. Co. v. Terte*, 351 Mo. 1089, 176 S.W.2d 25, 30 (banc 1943).

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir.1962), *Securities & Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C.Cir.1980); and *Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53 (E.D.Pa.1980), cited by Father, all involve questions relating to pre-trial discovery, and are not on point. Although each of these cases indicate various factors

to be considered, each case ultimately recognized the broad discretionary power of the trial court in deciding whether to grant or deny the stay. On the other hand, *U.S. v. White*, 589 F.2d 1283 (5th Cir.1979), held that a criminal defendant "was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him [in the civil suit]; although he may have been denied his most effective defense by remaining silent, there is no indication that invocation of the fifth amendment would have necessarily resulted in an adverse judgment." *Id.* at 1286. *See also, Anglada v. Sprague*, 822 F.2d 1035 (11th Cir.1987), wherein the court pointed out that the fifth amendment privilege against compulsory self-incrimination must be claimed with respect to particular questions, and that a "blanket" refusal to answer all questions is unacceptable. *Id.* at 1037.

■ Here, Father was not forced to waive his fifth amendment rights. Father made the decision not to testify at all. He could have elected to testify in certain areas and then claim his fifth amendment rights as to other questions. For whatever reason, he chose not to testify about anything relating to the two boys and his relationship with them. Neither did he present any evidence from his girl friend, B.K. Finally, we note that in considering a motion to stay, the juvenile court must be guided by the best interests of the child; here, that court decided that for the welfare and best interests of the children, the matter needed to be resolved. The court did not abuse its discretion in denying Father's motion to stay. Point denied.

Father's next point alleges that the trial court erred in denying his motion for continuance because, as a result, he was "deprived of the opportunity to present an expert witness in his behalf, whose testimony was vital and irreplaceable with regard to the central issue to be decided." He desired to present Dr. Arthur H. Green to testify on the lack of trustworthiness of the video taped interviews and exchanges between Dr. Duncan and the children.

Rule 65.04, in part, provides:

An application for a continuance on account of the absence of witnesses or their evidence shall show:

(1) The facts showing the materiality of the evidence sought to be obtained and due diligence upon the part of the applicant to obtain such witness or testimony;

(2) The name and residence of such witness, if known, or, if not known, the use of diligence to obtain the same, and also facts showing reasonable grounds for belief that the attendance or testimony of such witness will be procured within a reasonable time;

■ Father's application set forth the materiality of the proposed evidence. However, his application did not state "facts showing ... due diligence upon the part of the applicant to obtain such witness or testimony." Although the application stated that Father's attorney had been "diligent in the preparation of this case," the application did not disclose when Green was first contacted by Father, when Father learned what Green would say, when he first learned of Green's unavailability for the week of June 22, or any other facts showing what actual efforts Father had made to obtain the presence of Green or his testimony. The application was deficient for failing to set forth such facts.

Rule 65.04(2) also requires such an applicant to state facts showing a reasonable belief that the attendance or testimony of the witness will be procured within a reasonable time. Father's application said "Dr. Green will be unavailable to testify the week of June 22, 1987." For such absence to be grounds for a continuance, there must be a probability the testimony can be obtained at a certain future time or within a reasonable time. *Stephens v. Bi-State Development Agency*, 439 S.W.2d 252, 254 (Mo.App.E.D.1969). There were no facts stated in the application as to the days or weeks he would be available, either to testify in person or by deposition. Since such facts were not alleged, there was no showing that Green would be available within a reasonable time, as required by Rule 65.04(2). In absence of compliance

with the requirements of these Rules, there can be no abuse of discretion in denying a continuance. *Schreier v. Schreier,* 625 S.W.2d 644, 649 (Mo.App.E.D.1981); *Phillips v. State,* 639 S.W.2d 270, 275–276 (Mo. App.E.D.1982). Point denied.

 Father's last issue on appeal is that "the trial court erred in denying a motion to dismiss the juvenile proceedings because the juvenile court has jurisdiction over minors only." Section 211.031 RSMo.1986, establishes the jurisdiction of the juvenile court, providing that "the juvenile court shall have exclusive original jurisdiction in proceedings: (1) Involving any child who may be a resident of or found within the county and who is alleged to be in need of care and treatment because: ... (b) The child is otherwise without proper care, custody or support; ..." This statute has been upheld as being constitutional. *Minor Children of F.B. v. Caruthers,* 323 S.W.2d 397 (Mo.App.E.D.1959).

Here, the juvenile proceeding was initiated by a juvenile officer who had evidence that S.M., then four years old, was being sexually abused by his father. Evidence of sexual abuse is sufficient for a juvenile court to assume jurisdiction for the protection of a child pursuant to § 211.031. *C.R. K. v. H.J.K.,* 672 S.W.2d 696, 698 (Mo.App. E.D.1984). The court did not err in denying Father's motion to dismiss. Point denied.

The judgments of the trial court in the dissolution proceeding, and the juvenile court matter are affirmed.

SIMON, P.J., and CRANDALL, J., concur.