Larry Don KNOBLAUCH,
Petitioner-Respondent,

v.

Beverly Jean Knoblauch JONES,
Respondent-Appellant.

No. 11508.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 27, 1981.

Vernie R. Crandall and Douglas K. Crandall, Crandall, Crawford & Crandall, Carthage, for respondent-appellant.

Robert P. Warden, Joplin, for petitioner-respondent.

MAUS, Chief Judge.

This is an action by the petitioner-respondent-father (respondent) to modify a decree awarding custody of two children to the respondent-appellant-mother (appellant). The respondent's amended motion alleged the prior decree should be modified because the appellant had moved to Corpus Christi, Texas, and had on numerous occasions refused to permit him to visit the children in her home in Corpus Christi.

Two children were born to the parties: Lyle David on January 13, 1968, and Adam Douglas on September 9, 1973. Their marriage was dissolved in an uncontested action on July 28, 1975, in the Circuit Court of Jasper County, which at that time was the residence of both parties. At the time of the dissolution Lyle was seven years of age and Adam was two. Custody of the two children was placed with the mother, the father to have reasonable visitation including temporary custody every other weekend, two weeks during the summer and on alternate holidays and birthdays of the children. The appellant was awarded child support in the amount of $200 per month.

In this action the trial court modified the decree by removing the children from the custody of the appellant and awarding their custody to the respondent, the appellant to have reasonable visitation and temporary custody one month in the summer and on one weekend per month and on alternate birthdays and holidays. The trial court made no findings of fact and the decree declared only that the motion should be sustained.

Within a short period of time after the entry of the original decree, the appellant decided she should move to Corpus Christi to find employment and start over. She had relatives in the Corpus Christi area. She stated she had been unable to find employment in Jasper County. When the respondent learned of her decision he told her he would rather she didn't move as it would interfere with his visitation. They discussed the problem but didn't agree on any solution. She did move in August, 1975.

The appellant did find employment in Corpus Christi. She apparently returned to Jasper County from time to time to visit relatives. On many, if not all, of these occasions she delivered the children to the temporary custody of the respondent. On other occasions the respondent or someone on his behalf picked up the children in Corpus Christi. While the evidence on the subject is vague, it appears the respondent had temporary custody of the children for the following periods: during the Christmas holidays 1975; two months in the summer 1976; during the Christmas holidays 1976; not quite three months in the summer 1977.

Appellant remarried September 10, 1977. The respondent had remarried in October, 1976. Some time before the Christmas holidays 1977, the appellant told respondent that she did not want him to have custody during those holidays; relatives of her new husband were coming and she wanted the children to become acquainted with those relatives. The respondent, unannounced, went to Corpus Christi the day before Christmas. He was permitted to visit the children in appellant's home and to take them to his motel room. On this trip the respondent presented the appellant with what he termed a proposed modification providing for fixed visitation, the terms of which are not disclosed in the record. The appellant said she would let her lawyer look at it, but she did not respond to it. The respondent then in March, 1978, filed his original motion to modify. On one occasion service was attempted on appellant in Corpus Christi, but apparently no service was had until the appellant returned to Missouri for the habeas corpus action which will be hereafter discussed.

In May, 1978, the respondent called and asked the appellant if he could come to Corpus Christi and visit with the children. She told him she would rather he did not. Nevertheless, the respondent went to Corpus Christi but could not find the appellant or the children. The appellant, her husband and the children had gone camping. June 2, 1978, unannounced, he went to Corpus Christi. At about 9:00 p.m. he appeared at appellant's home and asked to visit the children. She declined as they were ready for bed, although he did visit with them through the window. He was told to come back the next day. The respondent spent the night in his camper parked across the street from the appellant's home. The next day appellant and her family went to church. They observed the respondent there, apparently watching them. Then, through subterfuge, the appellant and the children evaded the respondent. The appellant stated that she engaged in subterfuge because the manner of respondent's attempt to visit had upset the children and they did not want to see him and because of his activities she felt as if she was being chased.

In August, 1978, the appellant called the respondent and suggested the respondent get the children for a two-week visit if he would have them back before school. Respondent did get the children; but, at the end of that period refused to permit the children to return to the appellant. He explained the refusal because he wanted fixed visitation and that was the only way

he was going to get them. However, appellant testified that when she asked him if "it wasn't a little bit of spite, the reason he took the children away and he said maybe it was." The respondent did not deny this statement.

On August 23, 1978, the appellant filed a habeas corpus action in Jasper County for the return of the children. Only an incomplete reference to the habeas corpus action is before this court. However, it appears the habeas corpus action was purportedly consolidated with this action and the children ordered to remain in the respondent's custody pending the final determination of his motion to modify. The basis upon which the petition in habeas corpus was denied and that action purportedly consolidated with this action does not appear in the record.

From the time the respondent took the children in August, 1978, until apparently shortly before the first hearing upon the motion to modify, the appellant was permitted to visit the children only every other weekend and only in the home of respondent and in the presence of respondent or his then wife. Respondent said he had been told by a third party the appellant intended to take the children and go to Canada. This third party appeared as a witness and said that he had without foundation made such a suggestion to the respondent. The appellant denied any such intention. December 11, 1978, the appellant filed a motion for five-days' custody at Christmas. Again, apparently, the motion was not heard. The appellant was permitted to see the children only on the Friday before Christmas on Monday. The first hearing on the motion to modify was held March 8, 1979. Apparently after that hearing an order was entered for the appellant to have periods of temporary custody every other weekend and for one two-week period. Arrangements had been made for the appellant to have temporary custody on Mother's Day, 1979. However, the respondent told her she could not as Lyle wanted to attend his young sister's birthday party. Unfortunately a dispute followed in front of the children. Lawyers were called. The respondent denied that he had been told by the court "to do anything". However, it developed that he did call the trial judge and asked the judge to speak to Lyle. To this the judge responded, "I think I gave you a direct order that it had already been so ordered and you would comply, and I think you asked me, if my recollection serves me correctly, if I wanted to talk to Lyle and I told you there was no way I would talk to Lyle." The children then did spend the weekend with the appellant.

At the time of the final hearing on July 25, 1979, the respondent and his second wife lived in a comfortable home in a rural area near Joplin. The respondent was employed as the manager of a retail business and earned about $12,000 per year. The children attended the Seneca schools some 15 miles away. Respondent occasionally goes to church in Spring City and the children go to Sunday School one or two Sundays a month. The respondent's second wife, who was 26 years of age, is not employed. There was evidence that there was love and affection between the respondent, his wife and the children.

On the other hand, in September, 1978, the appellant and her second husband moved to Oklahoma City, Oklahoma. In December, 1978, they moved to a comfortable new house in Gutherie, Oklahoma. The second husband is employed as a salesman for a religious publishing company. He earns approximately $18,000 per year. The appellant is not employed. She and her husband are very active in their church, which is the same denomination as the church the appellant and respondent attended before their dissolution. The appellant is a vegetarian and does not believe in jewelry. These beliefs are tenets of her religion. She would encourage the children to be vegetarians. If they were in her custody the children would attend her church on a regular basis. They would attend a parochial school some 19 miles from appellant's home. When each child reaches the 10th grade, if the child so desired, he would attend a parochial academy some 200 miles away, but if the child did

not so desire, he would attend the public schools. There was evidence there was love and affection between the appellant, her husband and the children. The husband expressed his love for the children and his desire to help care for them and to help provide for them financially.

Even though the appellant's care for her children was not pleaded as a basis for modification, the respondent introduced evidence of her poor housekeeping and of excessive pets in her homes in Corpus Christi. Much evidence centered on whether or not the children had bites or sores when they were delivered to his temporary custody. On the other hand, the mother countered with evidence that when the boys were returned they would have rashes and with the father's failure to complete dental treatment for Lyle and to have an enlarging mole removed from Adam. Along the same lines, the respondent presented evidence that when the children entered the Seneca school they were nervous, did not do well scholastically, but greatly improved. The teachers testifying along these lines admitted that the nervousness and insecurity could have resulted from the children not being returned to their mother. The appellant countered with evidence that before their marriage was dissolved, the respondent spent little time at home and ignored the children. There was also evidence that when they were in the presence of the respondent, the oldest child acted as if he was afraid to show affection for the appellant and would look at the respondent to see if it was all right for him to talk.

Lyle was interviewed by the trial judge at the time of the first hearing. Apparently the focus of this inquiry was the question of appellant's visitation until the next hearing. When Lyle was asked what he would like to do to give the appellant a chance to visit with him, he replied he would rather do it "the way Dad's been doing". He explained that was to let appellant see them every other weekend unless something special was coming up. Rather tragically, he interjected that he felt like he had done something wrong. He said his father had explained the situation to him and that

when he had gone to Oklahoma his mother kept asking what his father had explained to him.

At the final hearing the trial judge interviewed both Lyle and Adam. During the interview Adam said that his dad never played with him in the swimming pool because he always comes home late. When asked if after all the court was done would he like to move to Oklahoma with his mother and her husband he replied: "I sure would".

At the final hearing Lyle testified that he had fun at his mother's and that he liked her husband. When asked which parent's custody he preferred he first replied: "Don't, really, I want to be both. It just seems to be like ... I don't know how to say it". He later said, "I don't really know where I want to be. Seems like I would be happier there", referring to respondent's. He added that it seemed like more of a family relationship.

■ Again this court is presented with the review of a case involving that most difficult question—which of two competing parents should have custody of children. It is axiomatic to say the question must be answered not on the basis of a reward to or punishment of either parent. *Hahn v. Hahn*, 569 S.W.2d 775 (Mo.App.1978); *Asbell v. Asbell*, 430 S.W.2d 436 (Mo.App. 1968). The ultimate and sole test is what will be in the best interests of the children. *Pearson v. Pearson*, 575 S.W.2d 934 (Mo. App.1978). The resolution of that question is most difficult where, as in this case, neither parent is shown to be totally an unfit parent. Judges dealing with such questions devoutly wish for omniscience as to which course is in the best interests of the children. In the absence of that ability in their collective wisdom, the legislature has adopted and the courts have developed rules of law to be observed in reaching that elusive answer.

■ It is important to keep in mind that this case does not involve the original disposition of custody upon the dissolution of a marriage. It involves the custody of two

children who, under a decree of a circuit court, had been in the primary custody of the appellant for more than two years before the respondent obtained their temporary custody and refused to return them to the appellant. By legislative mandate, the court may not modify that prior decree unless "it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian *and* that the modification is necessary to serve the best interests of the child." § 452.410, RSMo 1978. (Emphasis ours). The burden to prove those prerequisites to modification was upon the respondent. *In re Marriage of Britton*, 574 S.W.2d 475 (Mo.App.1978).

Two other standards must be observed by this court in its review of the action of this court-tried case. These standards are particularly applicable in cases involving personal relationship. Due deference must be given to the trial court that has had the opportunity to observe the parties and to hear not only what they said but how they said it. *In re Marriage of Hayden*, 588 S.W.2d 165 (Mo.App.1979). "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ As stated, the sole basis respondent alleged for the requested modification was that the appellant had moved to Corpus Christi, Texas, and had on numerous occasions refused to permit the respondent to visit the children in her home. The removal of a child from the jurisdiction may make the custody decree difficult of enforcement and may deprive the child of a needed association with the non-custodial parent. The custodial parent contemplating such a move should first seek the permission of the court having jurisdiction. However, the fact a custodial parent makes such a move without obtaining such permission is not per se grounds for modification of custody. *In re Marriage of Agne*, 565 S.W.2d 799 (Mo.App. 1978). Removal from the state is one factor which may be considered in determining what is in the best interests of the child. *Pender v. Pender*, 598 S.W.2d 554 (Mo.App. 1980); *Girvin v. Girvin*, 471 S.W.2d 683 (Mo.App.1971). It can be a decisive factor where the effect of the move is to wrench the child from the security of association with the non-custodial parent, family members and friends and from accustomed surroundings. There is no evidence of such effect in this case. The evidence was that the children had adapted well to their home in Texas. There was also evidence the father acquiesced in this move. He took no action based upon that move until more than two years after the event had taken place. While there can be no estoppel in determining the best interests of the children, his acquiescence in permitting this adjustment by the children must be considered. After such an adjustment has been made there should be compelling circumstances to find that a modification necessitating another adjustment is in their best interests. Compare *Hahn v. Hahn*, supra; *Schmidt v. Schmidt*, 591 S.W.2d 260 (Mo.App.1979).

■ A course of conduct which prevents a non-custodial parent from exercising decretal visitation is one factor that may be considered as a basis for the modification. *R. L. S. v. J. E. S.*, 522 S.W.2d 5 (Mo.App. 1975). Such a modification is not to be made as a reward to the non-custodial parent or as punishment for the custodial parent, but only because that course of conduct causes a modification to be in the best interests of the child. *J. L. W. v. D. C. W.*, 519 S.W.2d 724 (Mo.App.1975). This may be true when that course of conduct results in a denial of needed association with the non-custodial parent or evidence an attitude

that causes the custodial parent not to be a fit custodian. Such a course of conduct is most serious when it is accompanied by an attempt on the part of the custodial parent to alienate the child from the non-custodial parent. *Garrett v. Garrett*, 464 S.W.2d 740 (Mo.App.1971). This case is distinguished from those cases in which a course of conduct of interference with decretal visitation has formed the basis for a modification such as *R. L. S. v. J. E. S.*, supra; *Lipsey v. Lipsey*, 464 S.W.2d 529 (Mo.App.1971). By agreement, at least acquiescence, the parties had abandoned decretal visitation. Visitation as worked out by the parties was satisfactory until Christmas of 1977. The respondent's limited Christmas visitation was unfortunate even though the children were to become acquainted with their new relatives. Appellant's subterfuge on the June, 1978, visit cannot be condoned. Perhaps it can be understood under the circumstances of the respondent sleeping across the street from her home and the trip to the church which resulted in her feeling chased and impelling her into precipitous action. There is no evidence of any attempted alienation on the part of appellant. Her actions on two occasions in question, under the circumstances, do not constitute a course of conduct which compels a modification. *Slinkard v. Slinkard*, 589 S.W.2d 635 (Mo.App.1979).

The court has searched the record for a change in circumstances, even though not pleaded by the respondent, which would properly constitute a basis for modification. Much of the evidence elicited by the respondent centered upon the religious beliefs of the appellant. Yet, beliefs cannot be the basis for the modification. Those were the beliefs of the appellant at the time of the dissolution and apparently had been the beliefs of the respondent. The limitations upon consideration of religious beliefs have been set forth in *Waites v. Waites*, 567 S.W.2d 326 (Mo. banc 1978). In this case appellant's beliefs have not been shown to be against the best interests of the children and may not be the basis of a modification. *Waites v. Waites*, supra.

Nor can the modification be based upon the preference of the children. Such a preference is a factor to be considered. *Schmidt v. Schmidt*, supra, 591 S.W.2d 260. However, "[i]n considering the wishes of the child, it is important to ascertain and evaluate the basis for these wishes, so that the court can properly place this element in its proper perspective in deciding what is in the best interest of the child". *McBride v. McBride*, 579 S.W.2d 388, 390 (Mo.App. 1979). In this case the record does not reveal a well-reasoned and unequivocally expressed preference nor an extensive conversation between the court and the children as to many factors of the childrens' life, past, present and future. Here the youngest child clearly and unequivocally expressed a preference to live with the appellant. The older said he wanted it to be with both and concluded that "I don't really know where I want to be." He added that it seemed he would be happier at the respondent's. No exceptional circumstances exist which would call for the separation of these brothers. *Ray v. Ray*, 535 S.W.2d 267 (Mo.App.1976). Under the circumstances, the vaguely expressed preference of one of two children, contrary to the clear preference of the other, cannot be made the basis for the modification. Compare *Schmidt v. Schmidt*, supra.

In this review, this court must not only consider the lack of evidence of a changed condition, but must also consider evidence bearing upon the best interests of the children. It is undisputed that the respondent retained custody of the children contrary to the decree of the circuit court and contrary to his understanding with the appellant. Such action, much like interference with decretal visitation, although utter defiance of a court order is of a more serious nature, can be the basis for a modification or for denying a modification. *In re Marriage of H. B.*, 559 S.W.2d 73 (Mo.App. 1977). Again, such judicial action is not for the purpose of punishment of the parent violating the decree, but because that conduct demonstrates an attitude that such parent is not acting with the best interests

of the children in mind. In this case, that demonstration is reinforced by the respondent's undenied statement when the appellant asked him if "it wasn't a little bit of spite, the reason he took the children away and he said maybe it was."

In summary, this court has carefully reviewed the record for evidence of a changed condition upon the basis of which it could be determined that the modification ordered was in the best interests of the children within the meaning of *Murphy v. Carron*, supra, 536 S.W.2d 30. There is no substantial evidence to support the modification ordered. This court is most reluctant to reverse the decree of the trial court which will result in another change of primary custody for the unfortunate children. Yet, to do otherwise would be to uphold a decree not based upon substantial evidence and to give tacit approval to the respondent's violation of the original decree and the trial court's unexplained approval of that violation. However, it is in the childrens' best interests that they have a continued association with the respondent and the decree should be modified to provide that the respondent shall have the right of reasonable visitation and temporary custody of the children for a six-week period in the summer school vacation period and during the alternate holiday periods of Easter, Thanksgiving and Christmas and upon alternate birthdays. Otherwise, the original decree, including the respondent's payment of child support of $100 per child per month, including the visitation period in the summer, should remain undisturbed. The parties must sublimate their personal feelings to aid their children in adjusting to their difficult situation. The judgment of the trial court is reversed and the cause remanded for the entry of a judgment not inconsistent herewith.

BILLINGS, P. J., concurs.

HOGAN, J., not participating.