Willa MORRISON, Appellant,

v.

Jerry MORRISON, Respondent.

No. WD 35025.

Missouri Court of Appeals,
Western District.

Aug. 28, 1984.

John T. Kay, California, Mo., for appellant.

James F. Crews, Crews, Gaw & Pyle, Tipton, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

LOWENSTEIN, Judge.

Willa Morrison (mother) appeals from a denial of her motion to modify a child custody award. Her former husband and the

father of their two children, Jerry, will be referred to as "father." To facilitate setting out the facts, the following is a chronological list of relevant events:

August 10, 1979 Parties living Versailles, Missouri separated; daughter, 12, and son, 10, remained with father.

August 22, 1979 Mother filed petition for dissolution.

April 9, 1980 Docket entry that marriage was irretrievably broken, father awarded custody, division of marital property deferred; however, no order or judgment was signed. Mother moves to Eldon, Missouri.

August 18, 1981 Docket entry that real estate was to be sold and by order divided equally.

September 28, 1981 Judgment entered on real estate, but no judgment on the divorce or custody.

November, 1981 Daughter ran away from father's home, mother has had actual custody since.

July, 1982 Son requested mother to pick him up from summer camp and refused to go back to father's home.

August 26, 1982 Mother filed this motion to modify the custody award, motion for temporary custody, and asked for child support.

November 3, 1982 Mother files for default judgment on August 26th petition saying father has never filed answer.

November 12, 1982 Father files response to motion, but only contests the son's custody.

June 20, 1983 Hearing on mother's motion to modify. Court makes nunc pro tunc order, retroactively entering a dissolution and custody (to father) decree as of August 18, 1981, then denies mother's motion.

The mother's only argument is that the trial court erred in holding that an actual change in the children's custody is "insufficient to be a substantial change in circumstances." Taken by itself, that statement is true. The trial judge indicated both parents were competent to be custodians. The children had done reasonably well in school while in the father's home, and had done well with the mother. The evidence was the mother's fiance lived in the home with her and the children—this court does not condone this fact.

■ The standard of review here is under *Murphy v. Carron*, 531 S.W.2d 30, 32 (Mo. banc 1976), and Rule 73.01.

■ There are other factors to consider in this case, but the primary one is what is in the best interests of the children. There is value in a child's being kept with the parent who has had custody for a long period of time, as against uprooting him or her and transplanting that child in a new home. *Schmidt v. Schmidt*, 591 S.W.2d 260, 262 (Mo.App.1979); *Clouse v. Clouse*, 545 S.W.2d 402, 407–08 (Mo.App.1976). At the time of the 1983 hearing the son had lived with his mother for almost one year, and the daughter for a year and a half. The children had established themselves in a new school and community. It is in their best interests to avoid yet another move.

The father admitted in his responsive pleading that he had acquiesced in the children's decision to move. At trial he said, "They didn't really talk it over to me. They just done it on their own ... An so I thought, well I'll try it ... see if it was better for them ... I didn't want to fight." The father made no effort to get the children back. In *Knoblauch v. Jones*, 613 S.W.2d 161 (Mo.App.1981), there was similar evidence that the father permitted the children's move and took no action for two years. The court said that "while there can be no estoppel in determining the best interests of the children, his acquiescence in permitting this adjustment must be considered. After such an adjustment has been made there should be compelling circumstances to find that a modification necessitating another adjustment is in their best interests." *Id.* at 166.

When the mother filed her motion for change of custody, the father was late in filing a response and then only contested the custody of the son. At trial husband said, "Sandra Kay is 16 years old and her

ability and everything, if she wants to live down with her mother ... I wouldn't go against it." Later he added, "Well, I'd say most girls would want to be around their mother than be around their dad. Q. And your daughter is no exception? A. I would say no." The custody of the daughter should not have been at issue.

■ Another factor to be considered is the preference of the children. *Knoblauch*, 613 S.W.2d at 167. The *Knoblauch* court said that its record did not reveal a well-reasoned and unequivocally expressed preference nor an extensive conversation between the court and children. *Id.* Just the opposite is true here. The judge questioned the children at length about details of family life in both households. Both children, ages 16 and 14, confirmed without hesitation that they wanted to live with their mother. Both children described the father's unpredictable temper and the constant fighting, and numerous beatings. Both children left the father's house on their own accord, and even the trial court's decision alludes that the children will live with the mother regardless of which parent has legal custody when it said, "now what the parties agree to on the visitation, or on custody is up to them but this court cannot do anything until it finds a substantial change in circumstances."

■ Other factors to be considered are the increased ages of the children, and the deteriorated nature of the relationship with the father, and the deterioration of the son's behavior and performance at school while living with his father. *Minton v. Minton*, 639 S.W.2d 640, 643 (Mo.App. 1982); *McBride v. McBride*, 579 S.W.2d 388, 390 (Mo.App.1979).

■ Finally there are Missouri cases which hold that when the custodial parent relinquished the real and actual care and custody of the children to the *grandparents* that this would be sufficient to authorize a change of custody to the non-custodial parent. *Rolf v. Dennis*, 615 S.W.2d 668 (Mo.App.1981); *In re Marriage of Maupin*, 600 S.W.2d 686 (Mo.App.1980). Here the

case is even stronger. The father has abdicated his custody rights in favor of wife. *In re Marriage of Zigler*, 529 S.W.2d 909, 911 (Mo.App.1975), the court reversed a custody award to a father noting that among other factors, it considered it significant that the father allowed the mother to retain custody of the child. In this case there is a reasonable inference the father would have done nothing as far as custody is concerned had not the mother brought this action. It would be illogical to continue indefinitely actual custody with the mother, with no attempt by the father to enforce his rights under the original decree, with legal custody staying with the father who would be under no decretal obligation to provide for the support of his children. This factor along with the ones previously mentioned add up to substantial evidence on the record that the trial court erred in not modifying the custody decree. Its result was against the weight of the evidence and this court is convinced the result was wrong. Modification is proper in this case under § 452.410 RSMo.1978 as a significant change of circumstances with regard to the welfare of the children was shown by the father, as custodial parent, allowing them to stay for such an extended time with the mother and the children's desire to remain with the mother. *Henderson v. Henderson*, 622 S.W.2d 7, 10 (Mo. App.1981).

■ A sufficient record and evidence was made for this court to rule on child support due the mother from the father. *Searcy v. Searcy*, 658 S.W.2d 931, 934 (Mo. App.1983). The father had costs of about $400 a month and net take home pay of $196 a week. He testified he could pay $75 per child per month. The mother had about $1,000 in savings before the children came to live with her. This amount had been reduced to $100 at the time of the hearing. Her income as a hairdresser ranges between $400 and $500 a month. The mother estimated her total monthly expenses of being over $600. In the interest of finally disposing of the litigation and settling the parties' rights this court will enter the judgment the trial court should

have ordered since no further factual adjudication is necessary. *Calia v. Calia,* 624 S.W.2d 870, 874 (Mo.App.1981); *In re Marriage of Marks,* 625 S.W.2d 700, 702 (Mo. App.1981).

The judgment of the trial court is reversed. Pursuant to Rule 84.14 judgment is entered in this case as follows: The original decree of dissolution between Willa Morrison and Jerry Morrison is modified so that custody of the two minor children is placed with Willa Morrison. Jerry Morrison is to pay Willa Morrison $100 per month per child for the support of Sandra Kay Morrison and Jerry Wayne Morrison. Payments are due starting three days after this judgment is final and on the same day of the calendar month for each month thereafter for this amount, unless modified or until the children are emancipated or reach age 21. Payments to be made through the office of the circuit clerk. He is also to have visitation rights, to include every other weekend, and a month in the summer. Costs assessed against Jerry Morrison.

All concur.