Cheryl Lee DOHOGNE,
Petitioner-Respondent-Appellant,

v.

Charles Anthony DOHOGNE,
Respondent-Petitioner-Respondent.

No. 50920.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 25, 1986.

Phillip J. Barkett, Jr., Sikeston, for petitioner-respondent-appellant.

George W. Gilmore, Jr., Sikeston, for respondent-petitioner-respondent.

REINHARD, Judge.

Mother appeals from an order modifying a decree of dissolution of marriage and transferring primary custody of her son, Corey Dohogne, to father. We affirm.

Mother and father were married on June 14, 1978. Mother obtained a decree of dissolution of marriage by default on May 26, 1981, and was awarded custody of Corey, who was born on August 13, 1978. Father was granted reasonable visitation rights and was ordered to pay $40.00 per week as child support. Corey was the only child born of the parties' marriage; however, mother has an eleven-year-old son, Steven Turner, by a previous marriage, and father has a ten-year-old daughter, Dawn Dohogne, also by a previous marriage. Mother has custody of Steven, and custody of Dawn is with her mother.

On April 22, 1985, father filed a motion to modify the decree of dissolution, alleging that there had been a change in circumstances since the original decree and that modification of the child custody provision was necessary to serve the best interest of Corey. Ten alleged changes were enumerated in the motion, concerning, inter alia, mother's asserted interference with father's visitation rights, her neglect of the child, her frequent changes of residence, and her removal of the child from the State of Missouri for more than ninety days without first obtaining the permission of the court or father.

A hearing on the motion to modify was held on October 31, 1985. Father testified at the hearing and presented several witnesses: Corey's first grade teacher at Scott Elementary School; two women who babysat Corey for mother; and father's first wife. Mother also testified. Corey's school records and papers were introduced into evidence.

Briefly stated, the evidence adduced at the hearing indicated that since the decree of dissolution on May 26, 1981, mother, Steven and Corey have lived in at least six different residences in three states and Corey has attended three different schools. From May 26, 1981, through March 1983, they resided in a trailer located at Route 1, Illmo, Missouri. In March 1983 they moved into a trailer at 1200 Perkins Street in Scott City, Missouri. In September 1984, they were living in a trailer at Poolside Estates, also in Scott City. On September 2, 1984, that trailer burned and they "lost everything." They then moved into a trailer at 305 Cape in Scott City. Father sent them some clothes which he kept at his residence for Corey, but they apparently received no further assistance from father or his relatives after the fire. During this period of time mother was working irregular but numerous hours at various bars and taverns. She has a seventh grade education and no significant job training, so she believed that her employment opportunities in southeast Missouri were limited. This belief apparently led her to send the children to live with an aunt and uncle in Georgia in January 1985 while she went to Arizona and sought employment. During this time mother had no physical contact with the children, but called them regularly. The children stayed in Georgia until June 1985, when they

moved to Arizona and resided with mother and her boyfriend/fiance.

There was conflicting evidence as to whether father was kept apprised of these developments; however, mother admitted that she lied to father when Corey and Steven went to Georgia for six months, and told him that the children were "just down there visiting." There was also conflicting evidence regarding visitation and child support which need not be discussed in detail; suffice it to say that father did visit with his son on a fairly frequent basis until Corey went to Georgia, and that child support payments are withheld from his paychecks.

Father is employed as a roofer by the Drury Company, where he has been employed for almost 12 years. His average net weekly pay is $300, after child support for Corey is deducted. He currently lives in an apartment above the residence of his niece and her husband, and has two bedrooms, a kitchen, a living room with a sleeper couch, and a bathroom. Father testified that he has made arrangements with the niece and her husband regarding Corey's care while he is at work.

Father's first wife testified that he has a good relationship with his daughter, Dawn, and that during periods of visitation he keeps Dawn clean and helps her with her studies. She also stated that Dawn and Corey get along "real well" and that Dawn loves her half-brother "very much."

Corey's teacher at Scott City Elementary School testified that he had difficulties with his school work and failed spelling and handwriting, despite I.Q. scores that were well within the normal range. She stated that he was absent eleven out of thirty-two days of class, and was tardy on eight of the days he attended school. Corey appeared "dirty" some days, was not always properly clothed, and on occasion "his eyes were puffy," as if he "just woke up." She felt that Corey's hygiene and appearance problems were so significant that she discussed it with other teachers and contacted an organization which assists needy children. She also testified that make-up work which she sent home with Corey was not returned, and mother failed to attend a conference with her. The school records indicate that Corey's grades improved while he resided with his aunt and uncle in Georgia, and he is still making academic progress in Arizona.

The babysitters testified that mother sometimes left Steven and Corey with them for several days at a time without making advance arrangements, and that she did not bring clothes for Corey to wear the next day, a toothbrush for him to use, or school books for him to do his lessons. They testified that the children were generally not clean when mother dropped them off.

Mother testified at the hearing, and, in addition to some of the facts previously discussed, she described the apartment in Arizona and the living arrangements there. She further testified as to Corey's school activities, her interest in and involvement with her children's activities, and the close relationship between Corey and his half-brother, Steven. She said that she has been cleaning rooms and doing laundry for a hotel in Arizona and hopes to operate a day care center; however, she admitted that she and her children are dependent upon the income and resources of her boyfriend/fiance. Her boyfriend has applied for a transfer to the Ozarks, in which case they would move back to Missouri.

At the hearing, the court examined Corey in the presence of counsel for both parties, and he said he would rather live with his mother in Arizona. He said he "liked" his father, too, and enjoyed visiting him.

After hearing the evidence the court stated that:

> Pursuant to Section 452.410 RSMo. the Court finds upon the basis of facts that have arisen since the prior Decree of May 26, 1981 or upon the basis of facts that were unknown to the Court at the time of the prior Decree, that a change has occurred in the circumstances of the child and his custodian and that a modifi-

cation of the child custody portion of the Decree of Dissolution of May 27, 1981 is necessary to serve the best interest of the child.

The court further finds that from and since the prior Decree of May 26, 1981 until July, 1985, the home and educational environment of the child as provided by the mother is unstable and not satisfactory and that although from July, 1985 to the present there has been improvement, the child and mother are, by the mother's own testimony, totally dependent upon the income and resources of her live-in boyfriend/fiance which is not a satisfactory arrangement and the present home situation/environment offers no permanency with respect to this child.

The Court finds that the child is, in the Court's opinion, an intelligent child who has not been provided with the educational stability and assistance to which he is entitled.

Contrary to Section 452.377 RSMo. the mother removed the child from the state without prior court permission or written consent from the father for a period of more than ninety (90) days. This may be deemed a change of circumstances allowing the Court to modify the prior custody decree.

The Court further finds that the child, by being with the mother in their present home in Yuma, Arizona, has essentially been removed from his family and support groups in the southeast Missouri area and that the child is in need of the family support, love and affection as can be provided in the Southeast Missouri area and that there is no such support and affection in the Arizona area where he now resides.

. . . .

The Court has considered the factors to be used in determining child custody in connection with the Motion to Modify as set forth in Section 452.375 and after having considered same, finds that it is in the best interest and welfare of the child that the Decree heretofore entered be modified in that the general care, cus-

tody and control of the child shall be transferred from the mother to the father effective November 3, 1985.

On appeal, mother contends that the court erred in modifying the dissolution decree because the move to Arizona was beneficial for the child, and because the order would have "the effect of removing [Corey] from his half-brother [Steven] from whom he has never been separated except for periods of time during which the minor child visited with his father and would, thereby, have a very disruptive effect on [Corey's] life. . . ." We review the judgment under the well-known standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Mother's argument focuses on the move to Arizona. Removal of a child from Missouri for more than ninety days "except upon order of the court or with the written consent of the parties with custody or visitation rights . . . may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree." § 452.377, RSMo.Cum.Supp. 1984. Mother concedes that she removed Corey from Missouri without obtaining a court order or father's permission; however, she argues that the move was in Corey's best interest. Mother cites *Knoblauch v. Jones*, 613 S.W.2d 161 (Mo.App. 1981), for the proposition that:

> . . . the fact a custodial parent makes such a move without obtaining such permission is not per se grounds for modification of custody. *In re Marriage of Agne*, 565 S.W.2d 799 (Mo.App.1978). Removal from the state is one factor which may be considered in determining what is in the best interests of the child. *Pender v. Pender*, 598 S.W.2d 554 (Mo. App.1980); *Girvin v. Girvin*, 471 S.W.2d 683 (Mo.App.1971). It can be a decisive factor where the effect of the move is to wrench the child from the security of association with the non-custodial parent, family members and friends and from accustomed surroundings.

*Id.* at 166. While we have no quarrel with that proposition of law, mother's argument is fallacious. By focusing on whether the move was an improvement over previous circumstances, mother ignores the question of whether the child's best interest is now served by remaining in his mother's custody or being placed in his father's. The interstate move clearly constituted a change in circumstances, and once that change is shown the court must consider whether modification of custody is in the child's best interest in light of all the "relevant factors" specified in § 452.375, RSMo. Cum.Supp.1984. *Florea v. Florea*, 688 S.W.2d 373, 374 (Mo.App.1985).

The trial court was aware of and considered the improvements that mother has made in her life since July 1985; however, it also noted that mother conceded she was dependent upon the income and resources of her "live-in boyfriend/fiance." The court expressed concern about the "permanency" of Corey's living environment with mother, and that concern seems well-founded in light of mother's testimony that her boyfriend has applied for an employment transfer, her non-committal answers to questions about when and if she would marry her boyfriend, and mother's past history.

Mother's argument also ignores the other changes of circumstance which the court found had occurred since the prior decree and which were strongly supported by the evidence. Corey has moved no less than six times since 1981, and mother had no physical contact with Corey for the six-month period he was in Georgia, neglected his hygienic and academic needs, and often left him with babysitters for extended periods of time without making advance arrangements.

On the other hand, father has held the same job for almost twelve years and earns enough to support himself and Corey. He has continued to reside in southeastern Missouri, where nearly all of Corey's relatives live. While it is unfortunate that Corey must be separated from his half-brother, the evidence also showed that Corey enjoys a close and loving relationship with Dawn, his half-sister.

We have thoroughly reviewed the record in this case and find that the trial court's order was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously declare or apply the law.

Affirmed.

SNYDER, C.J., and CRIST, J., concurs