Joe LONG, Appellant,

v.

Connie LONG, Respondent.

No. WD 41037.

Missouri Court of Appeals,
Western District.

May 2, 1989

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

James J. Wheeler, Keytesville, for appellant.

James D. Worthington, Lexington, for respondent.

Before BERREY, P.J., and MANFORD and GAITAN, JJ.

BERREY, Presiding Judge.

On February 24, 1977, a decree of dissolution was granted to Joe Long (appellant herein) and Connie Long. Connie filed an answer but did not appear at the hearing. Joe Long was granted custody of twin girls, Jodi and Lori, and also custody of Karen, the younger sister.

On July 2, 1987, Connie Long Bushell filed a motion to modify the decree as to custody. Joe Long, appellant, filed his answer and a counterclaim. The court entered its judgment entry August 18, 1988.

Connie is employed by the Lexington Missouri Police Department as a secretary/dispatcher. On July 4, 1981, she married Roger Bushell and was married to him at the time of this hearing. They have lived at 2519 Franklin in Lexington for about four and one-half years.

According to Connie, Jodi and Lori came to live with her in May, 1987 and Karen moved in with her in June, 1987. Lori moved back with her father in March of 1988. In May of 1987, Connie received a phone call from Norma Baker. She was informed, "the girls had left home about two or three weeks before.... They were out running the streets, staying out all hours of the night." Joe wanted Connie to come and get the girls which she subsequently did. On July 2, 1987, Lori, Jodi and Karen executed "consent" forms requesting the court transfer their custody to their mother. At this time Karen was almost twelve years of age and Jodi and Lori were each almost fifteen years old. During the years that Joe had custody of the children he failed to allow meaningful visitation to Connie. Connie testified, "[h]e allowed me five minutes to sit in the living room, and after five minutes—and he sat there all the time, would not let me touch my children. After five minutes he would make me go off in the other room and ask me to leave." As a result of this behavior respondent only visited the children three or four times per year. Appellant explained his actions during visitation by saying "I just didn't trust her...."

Respondent acknowledged he lived with Norma Baker, a female to whom he is not

wed, for eight years. His girls had one bedroom, her son had a small bedroom and Norma and he shared a bedroom. Appellant acknowledged that he permitted Jimmy Meierer, age eighteen, Lori's boyfriend, to move into his house where Lori was also living. When Lori lived with her mother she was denied permission to date Jimmy, her mother believed that as Jimmy was eighteen and Lori was fifteen she was too young for him. They had a severe physical altercation in which Lori pushed her mother over a coffee table. Lori then went back to Carrollton and her father. Appellant is employed by Green Quarries and his live-in girlfriend is on ADC.

Appellant first contends that the trial court erred in changing the custody of Jodi and Karen as there was no substantial change of circumstances and the change was not warranted as being in the best interests of the children.

Section 452.410, RSMo 1986, governs the change of custody in a motion to modify. The statute dictates that "[t]he court shall not modify a prior custody decree unless ... it finds ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." The trial court's order of a change in custody may not be overturned on appeal unless that judgment is not supported by substantial evidence, it is against the weight of the evidence, or it is the result of a wrongful declaration or application of the law. *In Re Marriage of Scobee,* 667 S.W.2d 467, 468 (Mo.App.1984).

The trial court is in the optimum position to judge the credibility, sincerity and character of the witnesses. *In re Marriage of Powers,* 527 S.W.2d 949, 952 (Mo.App. 1975). Furthermore, as to the sufficiency of the evidence, this court must accept as true the evidence and all favorable inferences flowing therefrom which are favorable to the judgment and disregard that evidence which is contrary. *In re Marriage of Scobee, supra,* 667 S.W.2d at 468.

Using these standards for review, it is clear that the judgment of the trial court must be upheld. There was ample evidence showing that a substantial change of circumstances had occurred and that the change of custody was in the best interests of Jodi and Karen. Joe Long, by his own admission, denied meaningful visitation to Connie. He always sat and watched her when she visited her daughters, explaining that "I just didn't trust her mainly." This interference is not alone enough to warrant a modification. It is, however, a relevant factor to be taken into consideration. *See Conoyer v. Conoyer,* 695 S.W.2d 480, 483 (Mo.App.1985).

Perhaps the most telling incident which supports the change of custody was Joe's behavior at the time when Connie's daughters came to live with her. Connie received a phone call from Norma Baker informing her that the girls were living with their aunt in an unfit home and that Joe wanted Connie to get the girls. She testified that she was told that, "he did not care what I did with them." Furthermore, when Connie tried to prevent her fifteen year old daughter, Lori, from dating an eighteen year old and enforced house rules and curfews, Lori moved back with her father. Subsequently, he allowed her boyfriend to move in with them.

Joe's acquiescence in the initial move made by the girls is another factor to be considered. *See Knoblauch v. Jones,* 613 S.W.2d 161 (Mo.App.1981). Jodi and Karen have established themselves in a new school and a new community where they are making good progress. It is certainly in their best interests to avoid making another move. *Morrison v. Morrison,* 676 S.W.2d 279, 280 (Mo.App.1984). The preference of the children is yet another factor to be considered. *Knoblauch v. Jones, supra,* 613 S.W.2d at 167. Jodi and Karen were both questioned by the judge as to where they wished to live. Both testified that they wished to live with their mother. The increased age of the girls is another figure to factor into the custody equation. *Morrison v. Morrison, supra,* 676 S.W.2d at 281.

Children of divorced parents should not be separated absent exceptional circumstances. *Roberts v. Roberts,* 668

S.W.2d 249, 251 (Mo.App.1984). In the instant case, however, the trial court did not abuse its discretion in its award of Lori to the father and Jodi and Karen to the mother. Given the ages of the children, the relative proximity of the families and the nearness to majority of the older girls, the trial court's decision cannot be faulted. The emnity that Lori bears her mother and her inability to abide by her mother's house rules, as well as the excellent progress being made by Jodi and Karen, are all accounted for in the trial court's decision. Custody issues are often difficult to resolve so that all the pieces in the puzzle fit neatly together. Unfortunately, the realities of family life often lead to a less than ideal resolution of the problems involved. Each case is different, and given the facts and circumstances of the instant case, the trial court committed no error by its separation of the children.

■ It is also worthy of note that Joe has a live-in girlfriend, Norma Baker. Norma slapped the girls. It is proper for the trial court to consider the morals and mode of living of the parties involved. _H_____ v._ _H_____, 637 S.W.2d 432 (Mo.App.1982)._ Given all the above factors, it cannot be said that the trial court was in error. There was evidence that a substantial change of circumstances had occurred and that the modification of custody was in the best interests of Jodi and Karen. Appellant's Point I is denied.

Appellant's Point II alleges, "The trial court's ruling should be reversed because of the trial court's persistent comments on the evidence, direct and cross-examinations denied both parties a fair and impartial hearing." The respondent countered this point by filing a "motion to dismiss appeal as frivolous" and a "motion to strike appellant's Point II."

The nature of the appellant's attack on the trial judge demands a written response and therefore the motions are now overruled.

Appellant's Point II commences by citing Missouri Supreme Court Rule 27.06, which applies specifically to criminal cases. Next cited is Canon 1, Rule 2, Missouri Supreme Court Rules. Then section A of Canon 2, Rule 2, Missouri Supreme Court Rules. Finally, appellant cites Canon 3, Rule 2, Missouri Supreme Court Rules. None of which are germane to the issues at hand.

■ Appellant alleges that because the trial court made inquiry of witnesses he is not impartial and such conduct should warrant a reversal. Appellant argues that because the trial court asked him a number of questions on cross-examination and only asked respondent one question during her cross-examination, that the trial court was prejudiced against appellant. This logic is so convoluted it defies a logical, reasonable answer.

This was a contested custody matter. The best interests of the children were of paramount concern to the trial court, if not to the litigants. This court has reviewed in detail the entire record and specifically the numerous instances in which Judge Sloan was participating. The court finds that in each and every instance the questions asked by Judge Sloan elicited valuable information and were helpful to him in making his decision.

■ An example of appellant's heated argument follows: "Appellant was injured by the cross-examination by the judge." The trial court inquired about appellant's wage earning ability. Appellant conceded such a determination would be important in the matter of child support. Appellant then concludes his tirade by alleging, "If the Court had not taken over the cross-examination, there might not have been enough evidence for the Court to make such a finding...."

In cases of this nature involving children, their best interests and their financial needs must be explored and reconciled. The court in protecting the interests of the children, wards of the court, should explore every avenue—whether explored by the parties or not—to guarantee as nearly as possible that the best interests of the children will be served. _Dupree v. Dupree,_ 357 S.W.2d 241, 242 (Mo.App.1962).

When counsel fails, neglects, forgets, or overlooks salient issues to which the court

obviously needs answers to help in determining the "best interest" question, it should be and is obvious on its face the trial court has the power, authority, discretion and duty to elicit information which bears on this issue. Appellant's reliance on Rule 27.06 is grossly misplaced and might by some be seen as an attempt to mislead this court. For certainly in our jurisprudence a child custody case may not be measured, guided, or ruled by criminal law guidelines or rules.

It is not necessary to cite each instance in which the trial judge inquired of a witness. However, the entire record reflects the inquiries were inquisitorial in nature and sought to clarify the issues. There was no belligerent attitude adopted by the trial court toward either the parties or their attorneys and the trial court did not assume the role of advocate. *Bova v. Bova*, 135 S.W.2d 384 (Mo.App.1940). It is an attorney's responsibility to fully develop all the issues and provide the court with the information to make an informed decision. Matters concerning the custody of children, our most precious resources, are not to be taken lightly. Only after a complete review of all the relevant circumstances should such a grave decision be made. Furthermore, "[a] trial judge has an inherent right to question a witness as to matters which are material to the issues involved." *True v. True*, 762 S.W.2d 489, 493 (Mo.App.1988). Further, the appellant failed to make timely objections to the judge's questioning and may not now be heard to complain. *Id.*

The trial court asked such questions as, "Let me ask you something about that. He can't qualify your children under his insurance plan unless they are your dependents, legal dependents? Is that correct? Could he bring then in under that?" "Did it cost him any extra money?" "Was there a reason why you didn't visit?" "Is he drawing any kind of compensation?" The trial court is privileged to ask such questions, and here the judicial inquiry was within proper bounds. *Inloes v. Inloes*, 567 S.W.2d 732, 735 (Mo.App.1978).

In *Rodgers* the court declares that, "Minor children of divorced parents become wards of the court...." *Rodgers v. Rodgers*, 505 S.W.2d, 138, 144 (Mo.App.1974). There the court went on to observe that, "The court in a divorce case has the statutory duty to award the custody of the minor children of the parties and is enjoined to make such orders touching their maintenance and support as shall be reasonable in view of the circumstances of the parties and the nature of the case." *Id.*

Appellant does not challenge the action of the trial judge in awarding support of $24 per week per child to the respondent beyond a short reference in his reply brief as an illustration of how he was allegedly prejudiced by this action. This court will decline to address the issue further as it was not properly raised by appellant. Furthermore, under *Rodgers*, the trial judge's actions were proper.

The trial judge conducted the trial and himself in a most ethical and proper manner. The questions he asked generally sought to clarify the issues. Appellant's Point II is denied.

The judgment of the trial court is affirmed.

All concur.