V.L.P., Appellant,

v.

J.M.T., Respondent.

No. 65262.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 31, 1995.

G. Jeffrey Lockett, St. Charles, for appellant.

Rebecca A. Kaley, Clayton, for respondent.

WHITE, Judge.

V.L.P. (Mother) appeals from a judgment of the Circuit Court of St. Charles County, Missouri modifying child custody provisions of a divorce decree by transferring primary custody to J.M.T. (Father). We affirm.

Mother and Father were married in May, 1977. Two children were born of the marriage, J.T., born July 4, 1980, and N.T., born April 16, 1982. The marriage was dissolved February 27, 1987 and primary custody of the children was granted to Mother, subject to reasonable visitation rights and temporary custody to Father.

On July 18, 1988, Father filed a Motion for Contempt against Mother claiming she was depriving him of his temporary custody time with the children and threatening to leave Missouri with them. On August 11, 1988, Mother filed a Motion to Modify Father's temporary custody rights and requested the court's permission to remove the children from Missouri. In October, 1988, Mother and the children moved to Iowa to reside with her new husband, Martin Peterman. Father then filed a cross-motion requesting full custody of the children.

The parties entered into a settlement agreement on July 27, 1989 giving Mother permission to remove the children to Iowa and modifying Father's temporary custody rights. Father was granted visitation on the third and fifth weekends of each month, alternate holidays, Christmas vacation and eight consecutive weeks each summer. The agreement was incorporated into a court order of modification on April 17, 1990.

In October, 1990, Mother, her husband, and the children moved to Milwaukee, Wisconsin without the court's or Father's permission and without filing a Motion to Modify the April 17, 1990 court order. In April, 1991, Mother removed the children from Wisconsin and returned to St. Charles County, Missouri. She then initiated divorce proceedings against her second husband. Mother testified the return to St. Charles and divorce were caused by the discovery of her husband's drug addiction and abuse.

On August 20, 1991, Mother filed a Motion to Modify Father's temporary custody arrangements. She also filed a Motion for Contempt against Father, alleging he owed back child support, had not provided her with information on health and life insurance, refused to pay his share of travel costs for the children, and failed to return the children's clothing and other items at the end of their visit with Father in the summer of 1990. Father filed an answer and cross-petition for full custody of the children. Mother amended her Motion to Modify in November, 1991 and in August, 1992.

Then, on March 29, 1993, Mother amended her motion again and stated she planned to raise the children to observe the traditions, requirements, practices, and observances of the Jewish Orthodox faith, including observation of the Sabbath.[1] Consequently, she wanted to have the children every Friday night at sunset through sunset on Saturday night and limit Father to having the children from sunset Saturday to 8:30 p.m. Sunday. She also stated her plans included placing the children in a private school which would teach and encourage the observance of the traditions and practices of the Orthodox Jew-

---

1. Mother and children had previously practiced    Reformed Judaism.

ish faith. Father answered the motion by renewing his request for primary custody of the children and alleging Mother was attempting to and continuing to interfere with his time with the children. Father also indicated his belief it was not in the best interests of the children to remain with Mother, to remove them from the St. Charles School District, and to place them in a Hebrew school. Additionally, although he had agreed to raise the children in the Jewish faith, he did not believe it was in their best interests to raise them according to the strict practices of Orthodox Judaism as contemplated by Mother.

In July, 1993, Mother and the children moved from St. Charles County to University City in St. Louis County. Mother testified the move was made so she and her children could follow closely the observant traditions of the Orthodox Jewish faith, including not riding in cars from sunset Friday night to sunset Saturday night. She also placed the children in the Epstein Hebrew Academy, a private school located near Mother's apartment, and arranged for the children to be tutored in Hebrew.

On July 26, 1993 and August 4, 1993, a hearing was held on the issues presented by the motions.[2] Testimony of the parties indicates the oldest child, J.T., suffers from attention deficit disorder and takes medication for the condition. He has bronchial problems, is not doing well in school, and suffers from depression for which he has been going to counseling.

The court allowed both children to testify in chambers. They each testified they cared for both parents and their step-mother, JoAnn Tinsley. They testified the parents and JoAnn Tinsley did not denigrate the other parent to them. They also indicated both parents and JoAnn Tinsley properly disciplined them, urged them to take baths, brush their teeth, and take their medicine.

Additionally, J.T. repeatedly stated to his parents, step-mother, step-sister, step-brother, the Division of Family–Services' Social Worker, and the trial court his unequivocal

wish to live with his father. J.T. testified he did not want to live with his mother even if it meant separating from his brother. He also stated he did not want to participate in the Orthodox Observant Jewish traditions and did not want to go to the Hebrew School in University City. J.T. also expressed his dissatisfaction with being tutored in Hebrew twice a day. The younger child, N.T., did not want to choose between his parents and did not have any feelings about attending or not attending the Hebrew School. Both Mother and Father agreed it was in the children's best interest to be kept together.

Based on the above evidence and testimony, a decree modifying the former custody orders and granting Father primary custody was entered on August 30, 1993. This appeal followed.

In her first point on appeal, Mother argues the trial court abused its discretion in determining the children's best interest would be served by awarding primary custody to Father. We disagree.

This court will uphold the trial court's order if it is based on substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or misapplication of the law. *King v. King,* 793 S.W.2d 200, 202 (Mo.App. W.D.1990). We exercise great caution in setting aside a judgment in such cases on the ground it is against the weight of the evidence, and "only then with a firm belief that the judgment below was wrong, realizing that the trial court is in a much better position than is this court to judge the credibility of the witnesses and to determine the weight to be given to their testimony." *Id.* Thus, we give the prevailing party the benefit of all favorable evidence and reasonable inferences to be drawn therefrom, disregarding all evidence to the contrary. *Id.*

To modify child custody provisions of a dissolution decree, the trial court must find "upon the basis of facts that have arisen since the prior decree ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the

2. On the first day of trial, Mother informed the court she was no longer requesting custody of the children every Sabbath, but instead was re-questing custody on certain Orthodox Jewish holidays and Father only have custody on alternate weekends.

child." § 452.410.1 RSMo Supp.1993. The noncustodial parent has the burden of establishing there has been a substantial change of condition which requires a change of custody to serve the child's best interest. *King,* 793 S.W.2d at 202. "Further, the change of conditions or circumstances must be of a nature that the child will substantially benefit from the transfer." *Id.* Section 452.375.2 RSMo Supp.1993 directs the court to determine custody in accordance with the best interests of the child and consider all relevant factors in making such a determination including: the wishes of the child's parents as to custody; the wishes of the child as to custody; the interaction and interrelationship of the child with parents and siblings; the child's adjustment to home, school, and the community; the mental and physical health of all individuals involved; the needs of the child for a continuing relationship with both parents; the intention of either parent to relocate his/her residence outside the state; and which parent is more likely to allow the child frequent and meaningful contact with the other parent.

■ Based upon the evidence viewed as a whole, there is a substantial change of circumstances to support the transfer. At the time of trial, it had been six years from the dissolution of the parent's marriage and mother's award of primary custody of the children. The children were thirteen and eleven respectively and substantial changes had occurred in their lives. Namely, they had been moved numerous times, their mother had remarried and divorced, and their mother had elected to follow a stricter form of Judaism and was encouraging the children to do the same. The trial court found most significant J.T.'s testimony indicating his adamant desire to live with his father. As noted above, a court may consider the "wishes of the child as to his custodian." § 452.375.2(2). Here, the court found J.T., at thirteen years old, mature enough to express an intelligent preference as to which parent should be granted custody. The court found the basis for J.T.'s wishes to leave his mother were he does not get along with her, does not want to attend the school she wants him to attend, and does not want to follow the religious observances she wants him to follow which are different from what

he has practiced for the first thirteen years of his life. The court believed J.T.'s explanation for wanting to live with his father instead of his mother was "well reasoned and unquestionable" and met the standard required in *Knoblauch v. Jones,* 613 S.W.2d 161, 167 (Mo.App.S.D.1981). Also, no exceptional circumstances existed which would require the separation of the siblings. *Atwood v. Atwood,* 664 S.W.2d 673, 674 (Mo.App.E.D. 1984).

The evidence adduced at trial further showed, and the trial court accordingly found, "both parties to be fit and proper persons to have custody of the minor children, that both homes are suitable for the children." However, the trial court found Father's home was a "more stable, less stressful environment in which the boys may live and develop." This finding was supported, in part, by the fact Mother had moved four times, married a second husband who was later discovered to be addicted to and abused drugs, and was divorced all within the five years preceding the trial in this case. Under such circumstances where both parents are found to be fit but the trial court determines granting custody to one parent over the other would best serve the interests of the children, we must defer to the trial judge's wisdom, experience and superior opportunity to see, hear and evaluate the witnesses. *Wideman v. Wideman,* 628 S.W.2d 693, 694 (Mo.App.E.D.1982).

There is no evidence to suggest the trial court abused its discretion in finding a substantial change of circumstances existed justifying transfer of custody to Father or the transfer was other than in the best interests of the children. Point one is denied.

We have reviewed Mother's fourteen remaining points on appeal. No jurisprudential purpose would be served by an extended opinion on these points. Mother's remaining points are denied pursuant to Rule 84.16(b).

The trial court's judgment is affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.